FRANK P. FLYNN, Employee, Plaintiff v. EPSG MANAGEMENT SERVICES, Employer, RSKCO, Carrier, Defendants

No. COA04-1447

(Filed 5 July 2005)

**Workers' Compensation— compensable occupational injury— cameraman's shoulder**

An injury to a cameraman's shoulder resulted from causes and conditions characteristic of his employment as a cameraman, and competent evidence in the record supported the Industrial Commission's award of workers' compensation benefits. The injury is not an ordinary disease of life to which the general public is exposed.

Appeal by defendants from opinion and award entered 3 June 2004 and amendment to opinion and award entered 14 June 2004 by Commissioner Thomas J. Bolch for the North Carolina Industrial Commission. Heard in the Court of Appeals 15 June 2005.

FLYNN v. EPSG MGMT. SERVS.

[171 N.C. App. 353 (2005)]

*Leah L. King, for plaintiff-appellee.*

*Hedrick & Morton, L.L.P., by G. Grady Richardson, Jr. and Stephen E. Coble, for defendants-appellants.*

TYSON, Judge.

EPSG Management Services and its insurance carrier, RSKCO, (collectively, "defendants") appeal the opinion and award of the Full Commission of the North Carolina Industrial Commission ("the Commission") which concluded Frank P. Flynn ("plaintiff") suffered a compensable occupational disease. We affirm.

## I. Background

From April through July 2001, plaintiff worked as a camera operator on a Showtime Entertainment project entitled, "Going to California." On average, he worked twelve hours a day, five to six days per week. Plaintiff utilized a hand-held camera about twenty-five to thirty percent of the time. He would pick the camera up and rest it on his shoulder while moving and contorting his body to obtain the correct filming angle. The camera weighed thirty to forty-five pounds.

On 20 July 2001, plaintiff reached across his body with his left arm to pick up his camera. As he lifted the camera, plaintiff experienced a sudden, piercing pain in his left arm. Plaintiff described the pain as stabbing initially, followed by numbness. Prior to 20 July 2001, plaintiff had noted some tightness and stiffness in his shoulder. However, plaintiff presumed it was caused by fatigue from the long hours he worked.

Plaintiff sought medical attention from his primary physician, Dr. Alan Jackson ("Dr. Jackson"), on 30 July 2001 and complained of left shoulder pain. Plaintiff provided Dr. Jackson a history that he had used his left shoulder a "bit too much these past few weeks shooting a movie." Plaintiff was sent for a shoulder x-ray and an MRI was later performed on 29 August 2001. After receiving the MRI results, Dr. Jackson scheduled an appointment for plaintiff with Dr. David A. Esposito ("Dr. Esposito") on 13 September 2001. At that time, Dr. Jackson's diagnosis of plaintiff's complaint was distal supraspinatus tendonosis.

Plaintiff remained out of work during this time. His first appointment with Dr. Esposito was on 12 October 2001. At that time, Dr. Esposito noted plaintiff to be "tender over the front part of his

shoulder." Dr. Esposito felt plaintiff would benefit from arthroscopic surgery. Dr. Esposito further indicated that he restricted plaintiff to light duty jobs with no use of the left arm, if such work was available.

On 6 December 2001, Dr. Esposito performed arthroscopic surgery on plaintiff. Dr. Esposito located a tear in plaintiff's rotator cuff and also noted plaintiff had synovitis, *i.e.* inflammation of the joint lining. Dr. Esposito testified that the synovitis was "most likely reactive in nature" from the 20 July 2001 injury. Plaintiff remained out of work and his condition did not improve. Plaintiff underwent a separate treatment for his ailing shoulder by Dr. Esposito.

Plaintiff made efforts to find other employment which would not require the use of his left shoulder. He enjoyed little success. At the time of the injury, plaintiff was fifty-six years old with a high school education. The majority of his career was spent in the motion picture industry.

Plaintiff filed a Form 18 on 27 December 2001 describing his injury as "left shoulder." An amended Form 18 was filed on 2 July 2002, alleging "trauma in the employment pursuant to N.C.G.S. 97-53(20)" and adding "synovitus" as a listed injury or occupational disease. "Synovitus, caused by trauma in employment" is enumerated as an occupational disease in N.C. Gen. Stat. § 97-53(20).

RSKCO denied plaintiff's claim asserting, "Mr. Flynn did not sustain a compensable injury by accident . . . ." and the case was assigned for hearing. A pretrial order was filed declaring the issues to be determined, in part whether plaintiff sustained: (1) a compensable injury by accident under N.C. Gen. Stat. § 97-2(2); and (2) an occupational disease as defined by N.C. Gen. Stat. § 97-53(20).

The case was heard before the deputy commissioner on 24 September 2002. The deputy commissioner filed an opinion and award on 28 January 2003 finding plaintiff's rotator cuff tear was an occupational disease. The order was later amended on 10 February 2003 to change plaintiff's average weekly wage. Defendants appealed to the Commission and the case was heard on 8 July 2003. The Commission ordered the record to be reopened on 9 July 2003 for plaintiff to undergo a functional capacity evaluation.

On 3 June 2004, the Commission filed its opinion and award affirming the deputy commissioner's opinion and award that plaintiff suffers from a compensable occupational disease. The

Commission's opinion and award included the following stipulations by the parties:

> The issues before the Full Commission are: (i) whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on 20 July 2001; (ii) whether plaintiff contracted an occupational disease arising out of and in the course of his employment with defendant-employer; and (iii) if so, what compensation, if any, is due plaintiff.

An amendment to the opinion and award was filed on 14 June 2004 to change plaintiff's average weekly wage. Defendants appeal.

## II.  Issue

The issue on appeal is whether competent evidence supports the Commission's findings of fact and conclusions of law that plaintiff suffered a compensable occupational injury.

## III.  Standard of Review

The appropriate appellate standard of review in appeals arising from decisions by the Commission is well established. "In reviewing an order and award of the Industrial Commission in a case involving workmen's compensation, [an appellate court] is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Moore v. Federal Express*, 162 N.C. App. 292, 297, 590 S.E.2d 461, 465 (2004) (quotation omitted). "As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal." *Rackley v. Coastal Painting*, 153 N.C. App. 469, 472, 570 S.E.2d 121, 124 (2002) (citation omitted).

Although on appeal the Commission's findings of fact are conclusive where supported by competent evidence, "findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (internal citations and quotations omitted). Further, "the Industrial Commission's conclusions of law are reviewable *de novo*." *Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 783 (2003) (citing *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 468 S.E.2d 269 (1996)).

## IV.  Compensable Occupational Injury

Defendants argue the Commission erred in determining plaintiff's injury qualified as compensable occupational injury. We disagree.

An occupational disease is compensable if the disease "is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (2003); *Thomason v. Fiber Indus.*, 78 N.C. App. 159, 161, 336 S.E.2d 632, 633 (1985), *disc. rev. denied*, 316 N.C. 202, 341 S.E.2d 573 (1986).

> There are three elements which are necessary for the plaintiff to prove in order to show the existence of a compensable occupational disease under N.C. Gen. Stat. § 97-53(13): (1) the disease must be characteristic of persons engaged in a particular trade or occupation in which the plaintiff is engaged; (2) the disease must not be an ordinary disease of life to which the public is equally exposed; and (3) there must be a causal connection between the disease and the plaintiff's employment.

*Jarvis v. Food Lion, Inc.*, 134 N.C. App. 363, 367, 517 S.E.2d 388, 391 (citing *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981)), *disc. rev. denied*, 351 N.C. 356, 541 S.E.2d 139 (1999).

Plaintiff proffered substantial evidence that his injury resulted from his employment as a cameraman. Dr. Esposito testified that plaintiff's job, which involved significant overhead activity, predisposed plaintiff to, and placed him at a greater risk for, rotator cuff and shoulder problems, than the general public. Dr. Esposito stated that plaintiff's job as a cameraman required him to contort his body into different positions to get the correct camera angle, operate and lift over his head cameras of varying weight, and work long hours. These factors differentiated plaintiff's employment from that of the general population. Dr. Esposito further opined that because of the constant overhead activity, the incident on 20 July 2001 was "the final straw that broke the camel's back."

Based on our review of the record, depositions, and transcripts, competent evidence exists to support the Commission's conclusion of law that: (1) "[p]laintiff developed a rotator cuff tear and further medical complications due to causes and conditions characteristic of

and peculiar to his employment . . . ."; and (2) "[t]his rotator cuff tear and further medical complications is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease." *See Jarvis*, 134 N.C. App. at 367, 517 S.E.2d at 391 (three elements necessary to show a compensable occupational disease under N.C. Gen. Stat. § 97-53(13)); *Rackley*, 153 N.C. App. at 472, 570 S.E.2d at 124 ("As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal."). Defendants' assignment of error is overruled.

## V. Conclusion

Plaintiff's injury resulted from causes and conditions characteristic of his employment as a cameraman. The injury is not an ordinary disease of life to which the general public is exposed. Competent evidence in the record supports the Commission's findings of fact and conclusions of law. The Commission's opinion and award is affirmed.

Affirmed.

Judges McCULLOUGH and BRYANT concur.