ZORAIDA WILLIAMS, Plaintiff v. LAW COMPANIES GROUP, INC., Employer,
ZURICH, Carrier, Defendants

No. COA06-1586

(Filed 15 January 2008)

**Workers' Compensation— causation—guess or mere speculation**

The Industrial Commission erred in a workers' compensation case by finding and concluding plaintiff's disability was ongoing after 7 March 2002, and the opinion and award is vacated and remanded, because: (1) the medical evidence failed to support the requisite causal connection between the accident and plaintiff's physical impairment since it did not rise above the level of a guess or mere speculation; and (2) the Commission's conclusions are not supported by its findings of fact regarding the causal connection between the accident and plaintiff's alleged pain and disability.

Judge GEER dissenting.

Appeal by defendants from opinion and award entered 19 July 2006 by the Full Commission. Heard in the Court of Appeals 20 September 2007.

*Scudder and Hedrick, by Samuel A. Scudder, and Exum Law Group, by Annette Exum, for plaintiff-appellee.*

*Lewis & Roberts, P.L.L.C., by Richard M. Lewis and Paul C. McCoy, for defendant-appellants.*

BRYANT, Judge.

Law Companies Group, Inc. and Zurich (defendants) appeal from an opinion and award entered 19 July 2006 by the Full Commission awarding Zoraida Williams (plaintiff) ongoing temporary total disability from 21 September 2000, all medical expenses and attorney's fees. For the reasons stated herein, we reverse the Full Commission's opinion and award and remand.

In 1988 and prior to working for defendants, plaintiff sustained double femur fracture injuries as a result of a motor vehicle accident. Plaintiff received medical treatment at Bellevue Hospital for approximately two years for her bilateral femur fractures which included rod placement and physical therapy.

WILLIAMS v. LAW COS. GRP., INC.

[188 N.C. App. 235 (2008)]

In June 1999, plaintiff was employed by defendant Law Companies Group as a soil technician. Plaintiff's job required bending, walking and lifting in order to test five-pound soil samples and twenty-five pound concrete samples for load bearing capabilities.

On 21 September 2000, plaintiff sustained a back injury as a result of a motor vehicle accident which occurred during her employment. Following her injury, plaintiff initially received medical treatment at Johnston Memorial Hospital where Physician's Assistant David Baker provided her treatment for complaints of cervical and lumbar spine pain and chest pain. On 26 September 2000, plaintiff presented to Rex Hospital with complaints of neck, back, and chest pain. On physical examination, Robert J. Denton, M.D. noted that plaintiff exhibited: (1) diffuse paralumbar tenderness to palpation with no palpable muscle spasm; and (2) no extremity swelling or deformities with full range of motion of all joints. On 29 September 2000, plaintiff began her treatment for back pain with Dr. Sarah E. DeWitt of Raleigh Orthopaedic Clinic. After taking plaintiff's history, Dr. DeWitt noted plaintiff suffered, "bilateral femur fractures at 18 years old and has rods on both sides, but has no symptoms from this."

On 9 October 2000, defendants accepted plaintiff's workers' compensation claim pursuant to Industrial Commission Form 63. On 25 October and 29 December 2001, 10 and 11 January and 10 May 2002, Regional Investigative Services Company performed surveillance of plaintiff's daily activities. On 25 October 2001, plaintiff was observed sweeping without a limp and without assistance. At the hearing, plaintiff was questioned regarding the video from 25 October 2001, as well as still photographs taken that day which accompanied the surveillance reports. Plaintiff testified that she was the person shown in the 25 October 2001 surveillance photo sweeping the porch. On 29 December 2001, plaintiff was also observed entering and exiting her sister's car and several places of business without assistance, which plaintiff admitted during the hearing.

On 13 November 2001, plaintiff began her treatment with Catherine O. Lawrence, D.O. of the Carolina Back Institute. Subsequent to Dr. Lawrence's examination and evaluation of plaintiff, Dr. Lawrence recommended plaintiff enroll in the Pain Management Program. After plaintiff's completion of the Pain Management Program, Dr. Lawrence initially assigned plaintiff a five percent permanency rating to the left and right legs. However, on 7 March 2002, Dr. Lawrence retracted her assignment of five percent permanency

**WILLIAMS v. LAW COS. GRP., INC.**

[188 N.C. App. 235 (2008)]

ratings to plaintiff's left and right legs and assigned plaintiff a five percent rating to the back.

On 13 August 2003, plaintiff began her treatment with Steven A. Olson, M.D., an orthopaedic surgeon at Duke University Medical Center. Dr. Olson took plaintiff's history and performed an examination. On 3 November 2003, Dr. Olson corresponded with plaintiff's counsel and stated, "[w]ith regard to your question as to whether the September 21, 2000 automobile accident aggravated substantially her current problems, my answer is no." He also stated that, "in my opinion, there is no reason I can identify as to why this accident should have precipitated this pain."

Following a hearing on 27 February 2003, Deputy Commissioner Deluca filed an opinion on 26 July 2004 concluding that on and after 7 March 2002, plaintiff (1) was neither disabled due to her 21 September 2000 injury, nor entitled to any temporary total disability compensation after that date; (2) plaintiff had no permanent impairment to the back or legs and was not entitled to any permanent partial disability compensation; and (3) defendants were entitled to a credit on all temporary total disability compensation paid to plaintiff from 7 March 2002 until defendants terminated benefits. Plaintiff appealed to the Full Commission.

By Opinion and Award filed 19 July 2006, the Full Commission reversed the Deputy Commissioner and awarded plaintiff (1) temporary total disability compensation from 21 September 2000 and continuing, (2) all past and future medical expenses, (3) attorney's fees of twenty-five percent of the compensation paid, and (4) defendants to pay costs. The dissenting opinion stated that based on lack of sufficient medical evidence "plaintiff has failed to prove that she is currently disabled due to her compensable work injury, and plaintiff needs no further medical treatment for her compensable injuries." From the Full Commission's Opinion and Award, defendants appeal.

---

On appeal, defendants argue the Full Commission erred in finding and concluding plaintiff's disability was ongoing after 7 March 2002. Defendants contend the medical evidence failed to support the requisite causal connection between the accident and plaintiff's physical impairment. We agree. For the reasons stated herein we vacate the Full Commission's Opinion and Award and remand.

Our review is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether

the conclusions of law are supported by the findings. *Moore v. Federal Express*, 162 N.C. App. 292, 297, 590 S.E.2d 461, 465 (2004). Although the Industrial Commission's findings of fact are conclusive where supported by competent evidence, "findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them." *Flynn v. EPSG Mgmt. Serv.*, 171 N.C. App. 353, 357, 614 S.E.2d 460, 463 (2005). Our review of the Industrial Commission's conclusions of law is *de novo. Ramsey v. Southern Indus. Constructors Inc.*, 178 N.C. App. 25, 30, 630 S.E.2d 681, 685 (2006).

Plaintiff bears the burden of proof by the greater weight of the evidence that she is disabled and the extent of her disability within the meaning of the Act. *Sims v. Charmes/Arby's Roast Beef*, 142 N.C. App. 154, 542 S.E.2d 277 (2001). Plaintiff must prove "each element of compensability, including causation, by a preponderance of the evidence." *Everett v. Well Care & Nursing Serv.*, 180 N.C. App. 314, 318, 636 S.E.2d 824, 827 (2006): Our Supreme Court has stated medical experts must provide, "sufficient competent evidence tending to show proximate causal relationship," between the alleged injury and the plaintiff's subsequent medical condition. *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (citation omitted). Expert medical testimony indicating that an incident "possibly" or "could or might" have caused an injury "does not rise above a guess or mere speculation and therefore was not competent evidence to show causation." *Edmonds v. Fresenius Medical Care*, 165 N.C. App. 811, 819, 600 S.E.2d 501, 506 (2004) (Steelman, J., dissenting), *rev'd per curiam for reasons stated in the dissent*, 359 N.C. 313, 608 S.E.2d 755 (2005).

The Commission made several findings which are not supported by competent evidence in the medical record. For example, in finding of fact number four, the Commission found that "on September 21, 2000, plaintiff sustained injuries to her back, chest and *legs*" as a result of the accident at issue. (Emphasis added.) Similarly, in finding of fact number six, the Commission found that "on September 29, 2000, plaintiff began treatment for back and *leg* pain with Dr. Sarah Dewitt, an orthopaedic specialist." (Emphasis added.) However, these findings regarding plaintiff's alleged leg injuries and treatment for the same are not supported by the medical evidence. The hearing evidence established that immediately following the 21 September 2000 accident, plaintiff was treated by the Johnston County Memorial Hospital emergency department where she was

diagnosed with a lumbar strain and chest contusion. At that time, plaintiff neither complained of, nor was diagnosed as having any leg injuries or leg pain. Moreover, Dr. Olson, who treated plaintiff for injuries alleged to be related to the 21 September 2000 accident, stated in response to plaintiff's counsel's 3 November 2003 letter and during his deposition, that the accident did not cause plaintiff's leg injuries or associated pain. When questioned regarding whether it was possible that plaintiff's leg pain was caused by the broken rod in plaintiff's leg, Dr. Olson testified:

> I think it is possible, not probable that her thigh pain is caused by this nail (rod). It's within the realm of possibility, but I'm not more than 50 percent sure that it is.

Dr. Olson stated he did not know the cause of plaintiff's pain and that the accident did not cause plaintiff's pain. Notwithstanding plaintiff's complaints of chronic leg pain, Dr. Olson testified he could not find a basis to restrict plaintiff's work activities on the basis of any consequences of the 21 September 2000 accident. Similarly, Dr. Lawrence's testimony and medical records establish plaintiff has a 0% disability rating, no impairment, and no work restrictions as result of the accident. However, in finding number thirty-one, the Commission found that both Drs. Lawrence and Olson testified that the 21 September 2000 accident *could* have caused the rod to break in plaintiff's right leg. The Commission's findings do not support its conclusions that plaintiff's pain and ongoing disability were caused by the accident. *See Edmonds* (medical testimony indicating that an incident "possibly" or "could or might" have caused an injury was not competent evidence to show causation). Accordingly, based on the absence of any record reference to leg injuries or pain connected with the 21 September 2000 accident, and given Dr. Olson's unequivocal statement that any pain plaintiff experienced was not causally related to, or even aggravated by, the accident, the Commission's finding that plaintiff sustained injuries to her legs as a result of the accident is without evidentiary support. *See Flynn*, 171 N.C. App. at 357, 614 S.E.2d at 463.

Ultimately, the Commission's conclusions are not supported by its findings of fact regarding the causal connection between the accident and plaintiff's alleged pain and disability. The challenged conclusions of law are:

1. Plaintiff sustained an admittedly compensable injury by accident to her back, chest and *legs* on September 21, 2000, and

suffers from *chronic leg pain as a result of the accident.* N.C. Gen. Stat. § 97-2(6).

2. Plaintiff is *currently disabled* as a result of her compensable injuries. The medical evidence reveals that as a result of her compensable injury, (a) Plaintiff is medically unable to return to her pre-injury employment; (b) Plaintiff has work restrictions of no lifting and restrictions on pulling, pushing, walking, standing, squatting, kneeling, bending and use of her lower extremities; (c) Plaintiff needs vocational assistance to help her locate suitable employment due to her physical limitations related to her compensable injury; and (d) Plaintiff takes prescribed medications for her chronic leg pain. Although Plaintiff may be able to do some work, she must have vocational assistance to help her locate suitable employment considering her severe physical limitations due to her compensable injury and her limited education and training. Plaintiff has not refused vocational assistance offered by Defendants.

. . .

4. As a result of her *chronic leg pain caused by her injury by accident of September 21, 2000,* Plaintiff has been temporarily totally disabled from September 21, 2000 through the date of hearing before Deputy Commissioner and continuing and is entitled to temporary total disability compensation during said period. N.C. Gen. Stat. §§ 92-2(9); 97-29.

5. Defendants are obligated to pay for all of Plaintiff's reasonably required medical treatment resulting from her back and chronic leg pain of September 21, 2000, including past and future treatment, and vocational rehabilitation assistance for so long as such treatment is reasonably required to effect a cure, provide relief and/or lessen her disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.

(Emphasis added). Although the Commission's legal conclusions state the accident caused plaintiff's pain and disability, the medical evidence presented establishes plaintiff's alleged ongoing disability is not causally related to the accident. In summary, the medical evidence related to any causal link between the accident and plaintiff's alleged pain and disability establishes: (1) the 21 September 2000 accident did not cause plaintiff to suffer leg injuries; (2) the accident did not cause the rod to break; (3) the accident did not aggravate

plaintiff's leg condition; (4) Dr. Olson had "no idea what is causing plaintiff's pain"; (5) that any restrictions plaintiff may have regarding her ability to work were not caused by the accident; and (6) plaintiff has "0% disability." As stated in the dissenting opinion, "the greater weight of the expert medical evidence . . . is insufficient to prove causation of plaintiff's condition, as all of these physicians' opinions do not rise above the level of a guess or mere speculation [and] is undoubtedly insufficient to prove that plaintiff's current symptoms are related to her compensable injuries." Plaintiff has failed to meet her burden of proving causation by a preponderance of the evidence. *See Everett*, 180 N.C. App. at 317, 636 S.E.2d at 827. Accordingly, the Commission's conclusions of law are in error as causation must be established by the evidence "such as to take the case out of the realm of conjecture and remote possibility." *Holley*, 357 N.C. at 232, 581 S.E.2d at 753. The Commission's opinion and award is reversed. *See Gutierrez v. GDX Automotive*, 169 N.C. App. 173, 179, 609 S.E.2d 445, 450 (2005) (reversal of award in conjunction with Commission's conclusions of law that plaintiff was disabled where medical evidence was insufficient to support such conclusion). We reverse and remand to the Full Commission for disposition consistent with this opinion.

Reversed and remanded.

Judge STEELMAN concurs.

Judge GEER dissents in a separate opinion.

GEER, Judge, dissenting.

In contrast to the majority opinion, I would remand to the Full Commission for further findings of fact. I, therefore, respectfully dissent.

The Full Commission found that "[t]he primary issue before the Commission is whether Plaintiff's temporary total disability benefits should be terminated effective December 2001, on the ground that Plaintiff did not have any continuing disability *due to her workplace injury* after that date." (Emphasis added.) While plaintiff argues that the presumption set forth in *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 620 S.E.2d 288 (2005), *disc. review improvidently allowed*, 360 N.C. 587, 634 S.E.2d 887 (2006), and *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867 (1997), should apply in this case, the Commission did not address that issue, and plaintiff has

failed to assign error to the omission. As a result, applicability of the presumption is not properly before this Court. *See* N.C.R. App. P. 10(d) ("Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."); *Harllee v. Harllee*, 151 N.C. App. 40, 51, 565 S.E.2d 678, 685 (2002) ("In the instant case, the additional arguments raised in plaintiff-appellee's brief, if sustained, would provide an *alternative* basis for upholding the trial court's determination that the premarital agreement is invalid and unenforceable. However, plaintiff failed to cross-assign error pursuant to Rule 10(d) to the trial court's failure to render judgment on these alternative grounds. Therefore, plaintiff has not properly preserved for appellate review these alternative grounds.").

On the causation issue addressed by the Commission, the Commission's critical findings of fact state:

31. The Full Commission finds that Plaintiff's chronic pain syndrome and the pain in her legs were caused by Plaintiff's motor vehicle accident on September 21, 2000. Specifically, both Dr. Lawrence and Dr. Olson noted that Plaintiff's onset of leg pain began approximately September 21, 2000, and both testified that a motor vehicle accident could have caused the rod to break in Plaintiff's right leg; even though Dr. Olson was of the opinion that it is unlikely the accident caused the rod to break without fracturing the bone itself.

32. The Full Commission gives greater weight to the opinions of Dr. Lawrence versus the opinions of Dr. Olson . . . .

33. On September 21, 2000, Plaintiff sustained compensable injuries to her back, chest and legs, and suffers from chronic leg pain as a result of her compensable injury. . . .

I fully agree with the majority that the finding that the 21 September 2000 accident "could have caused" the rod in plaintiff's right leg to break is insufficient to support a conclusion that the accident caused the broken rod.

If the Commission intended to find that plaintiff's chronic leg pain was the result of the broken rod, then there would be no basis for its determination that the compensable accident caused plaintiff's current disability. The Commission's findings of fact are not, how-

WILLIAMS v. LAW COS. GRP., INC.

[188 N.C. App. 235 (2008)]

ever, that clear. In finding of fact 31, the Commission references plaintiff's chronic pain syndrome and pain in *both* legs, as well as the broken rod in the right leg, while finding of fact 33 finds that the compensable accident caused compensable injuries to plaintiff's back, chest, and legs, as well as the chronic leg pain. In finding of fact 19, describing Dr. Lawrence's deposition testimony, the Commission differentiated between the doctor's opinions regarding chronic pain syndrome and the broken rod.

It may be, given the Commission's extensive focus on the broken rod, that the Commission was basing its finding of causation solely on the broken rod.[1] On the other hand, the Commission may also have been relying both on the broken rod and the chronic pain syndrome. There is no clear finding one way or the other whether the leg pain was related to the chronic pain syndrome. The record does contain evidence arguably supporting a finding that the chronic pain syndrome was caused by the accident. Dr. Lawrence, whom the Commission found credible, wrote that the pain syndrome "likely occurred as a result of [plaintiff's] back injury" and ultimately assigned plaintiff a five percent rating to the back. The record also contains evidence supporting defendants' position.

Because I cannot determine what the Commission intended to find or whether its conclusions would change with the omission of the broken rod, I would apply the principle that when the Commission's findings of fact " 'are insufficient to determine the rights of the parties, the court may remand to the Industrial Commission for additional findings.' " *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004) (quoting *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982)). I would, therefore, remand to the Commission to make findings of fact regarding whether plaintiff's current disability was caused by the 21 September 2000 accident without consideration of the broken rod in plaintiff's femur.

---

1. I do not agree with plaintiff that the broken femur rod "is the proverbial red herring." The broken rod is a primary focus of the Commission's opinion and was also the primary subject addressed during the two medical depositions taken in this case.