ZORAIDA WILLIAMS, Employee, Plaintiff,
v.
LAW COMPANIES GROUP, INC., Employer, and
ZURICH AMERICAN INSURANCE COMPANY, Carrier, Defendants.
No. COA09-418.
Court of Appeals of North Carolina.
Filed May 18, 2010.
Scudder & Hedrick, PLLC, by Samuel A. Scudder, for Plaintiff-Appellee.
Lewis & Roberts, P.L.L.C., by Richard M. Lewis, and Paul C. McCoy, for Defendants-Appellants.

UNPUBLISHED OPINION
BEASLEY, Judge.
Defendants (Law Companies Group, Inc., and Zurich American Insurance Company) appeal from an Opinion and Award of the Industrial Commission awarding Plaintiff (Zoraida Williams) temporary total disability compensation, medical compensation, and attorney's fees. We affirm.
The following is undisputed: In 2000 Plaintiff was employed by Defendant Law Companies Group, Inc., as a soil technician. Her job required walking, bending, and lifting five-pound soil samples and twenty-five pound concrete samples. On 21 September 2000 Plaintiff suffered a compensable injury by accident when she was involved in a motor vehicle accident. Defendants accepted Plaintiff's claim for workers' compensation benefits, and Plaintiff was treated by various health professionals for pain and other medical issues. On 21 June 2002 Defendant filed an Industrial Commission Form 33 request for hearing, alleging that Plaintiff was no longer disabled.
A hearing was conducted in February 2003. The evidence showed that Plaintiff had been seriously injured twenty years earlier in a car accident, resulting in the placement of rods in her legs. At some point after her September 2000 accident it was determined that one of these rods was broken. Plaintiff testified that since the accident in September 2000 she has had significant pain and difficulty with walking, sitting, and standing, and that she was unable to perform the level of physical activities that her job required. Private investigator Larry Bumgarner testified that he had made surveillance videos of Plaintiff and Plaintiff's sister. The surveillance videos were made in October 2001, December 2001, January 2002, and May 2002, and include footage of Plaintiff driving or riding in a car, walking to and from the car to several stores, and sweeping her porch. Following the hearing, depositions were taken of two of Plaintiff's medical care providers, Catherine Lawrence, D.O. and Dr. Steven Olson, M.D.
On 26 July 2004 Deputy Commissioner Deluca entered an Opinion and Award concluding that (1) Plaintiff was neither disabled nor entitled to temporary total disability compensation after 7 March 2002; (2) Plaintiff had no permanent impairment to her back or legs, and; (3) Defendants were entitled to credit for all temporary total disability compensation paid after 7 March 2002. Plaintiff appealed to the Full Commission. On 19 July 2006, the Full Commission reversed the Deputy Commissioner in an Opinion that awarded Plaintiff temporary total disability compensation from 21 September 2000, medical expenses, and attorney's fees.
Defendants appealed to this Court, which reversed the Full Commission on the grounds that the medical evidence did not support the Commission's conclusion that Plaintiff's accident caused her pain and disability. Judge Geer dissented, arguing that the case should be remanded for additional findings of fact. Williams v. Law Cos. Grp., Inc., 188 N.C. App. 235, 654 S.E.2d 725, rev'd on other grounds, 362 N.C. 506, 666 S.E.2d 750 (2008) (Williams I). On 10 October 2008 the Supreme Court of North Carolina reversed this Court "[f]or the reasons stated in the dissenting opinion," and remanded "to the Industrial Commission to make findings of fact regarding whether plaintiff's current disability was caused by the 21 September 2000 accident without consideration of the broken rod in plaintiff's femur." Williams v. Law Cos. Grp., Inc., 362 N.C. 506, 666 S.E.2d 750 (2008) (Williams II).
Following remand, the Full Commission entered an Opinion and Award on 29 December 2008. The Commission concluded in pertinent part that:
1. Plaintiff sustained an admittedly compensable injury by accident . . . on September 21, 2000, and suffers from chronic pain as a result of the accident. . . .
2. Plaintiff is currently disabled as a result of her compensable injury[.]
. . . .
4. As a result of her chronic pain caused by her injury . . . Plaintiff has been temporarily totally disabled from September 21, 2000[.]
. . . .
7. Defendants appealed this matter to the North Carolina Court of Appeals; therefore, Plaintiff is entitled to interest and an award of costs, including a reasonable attorney fee[.]
The Full Commission ordered Defendants to pay Plaintiff medical expenses, temporary total disability from 21 September 2000 until further order, and attorney's fees. From this Opinion and Award, Defendants appealed.

Standard of Review
Defendants appeal from an Industrial Commission Opinion awarding Plaintiff disability benefits. "In order to prevail on a disability claim for workers' compensation, the plaintiff bears the burden of proving by a preponderance of the evidence the existence and extent of his disability, and that the disability was caused by a disease or injury reasonably related to his employment." Lanier v. Eddie Romanelle's, 192 N.C. App. 166, 170, 664 S.E.2d 609, 611 (2008) (citations omitted). "In deciding whether a plaintiff has met his burden, the Industrial Commission must consider all competent evidence presented, and make specific findings of fact to support its conclusions for all `crucial questions.'" Id. at 170, 664 S.E.2d at 611-12 (quoting Hilliard v. Apex Cabinet Co., 305 N.C. 593, 596, 290 S.E.2d 682, 684 (1982) (other citation omitted). "The Workers' Compensation Act and the decisions of this Court clearly state that the Commission is the sole judge of the credibility of the witnesses and the weight of the evidence." Hassell v. Onslow Cty. Bd. of Educ., 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008) (citations omitted). Thus:
The Commission may not wholly disregard competent evidence; however, as the sole judge of witness credibility and the weight to be given to witness testimony, the Commission may believe all or a part or none of any witness's testimony. The Commission is not required to accept the testimony of a witness, even if the testimony is uncontradicted. Nor is the Commission required to offer reasons for its credibility determinations.
Id. at 306-07, 661 S.E.2d at 715 (internal citations and quotations omitted)).
"[T]he Industrial Commission's findings of fact `are conclusive where supported by competent evidence' and may be set aside only `when there is a complete lack of competent evidence to support them.'" Roberts v. Dixie News, Inc., 189 N.C. App. 495, 499, 658 S.E.2d 684, 686 (2008) (quoting Flynn v. EPSG Mgmt. Servs., 171 N.C. App. 353, 356, 614 S.E.2d 460, 462 (2005)). On appeal:
this Court is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." An appellate court reviewing a workers' compensation claim "does not have the right to weigh the evidence and decide the issue on the basis of its weight." Rather, the Court's duty goes no further than to determine "whether the record contains any evidence tending to support the finding." If there is any evidence at all, taken in the light most favorable to the plaintiff, the finding of fact stands, even if there was substantial evidence going the other way.
Aboagwa v. Raleigh Lions Clinic for the Blind, Inc., 167 N.C. App. 554, 556, 607 S.E.2d 1, 3 (2004) (quoting Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000); and Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (other citation omitted). However, "the Commission's conclusions of law are fully reviewable[.]" Holley v. ACTS, Inc., 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003) (citations omitted).
Defendants first argue that the Industrial Commission's "findings of fact 11, 12, 14, 15-17, 19, 20, and 22-27 are either incomplete or not supported by the factual and medical evidence of record." We disagree.
Defendants' arguments rely in large part on their assertions about the surveillance videotapes and their interpretation of deposition testimony about these videotapes. Accordingly, we first review the contents of these videotapes. The three videotapes admitted into evidence depict surveillance conducted on different dates and times between 25 October 2001 and 11 May 2002. The quality of these videos is poor, in that images are indistinct, details are not apparent, and the camera sometimes jerks or changes filming speed. Moreover, some of the footage depicts third parties who are neither Plaintiff nor her sister. The events videotaped on the various dates are summarized as follows:
25 October 2001: This video consists almost entirely of footage of Plaintiff's sister conducting her daily business throughout the day. This video also includes footage of a younger person wearing a backpack. Plaintiff is shown briefly at one point, sweeping a small porch for two minutes, then sitting in a chair on the porch.
29 December 2001: In this video, Plaintiff is shown driving to three businesses, each requiring less than fifteen minutes driving. Plaintiff parks directly in front of each store, and is shown walking the short distance from her car to the door, and returning to the car a few minutes later. Surveillance was conducted for less than an hour, and the video depicts Plaintiff's personal actions for less than five minutes.
10 January 2002: This video shows the Plaintiff's sister during the course of a workday. She is shown leaving the house very early, driving to work, returning home for lunch, and coming home after work. This footage does not depict Plaintiff.
Morning of 11 January 2002: This video mainly depicts Plaintiff's sister. In addition, it shows a third person, apparently a teenaged child of Plaintiff or her sister. This footage does not show Plaintiff.
Evening of 11 January 2002: This footage depicts a trip to Harris Teeter by Plaintiff and her sister. Plaintiff is shown walking to the truck and getting into the passenger side. Plaintiff is then shown walking into the store and later walking back to the truck. Plaintiff is depicted for less than five minutes total. She is limping in this video.
11 May 2002: In the last video, Plaintiff is dropped off at the Raleigh Orthopaedic Center. She is shown walking a few feet from the truck to the door, and later shown walking the few feet from the office to get back into the truck. Plaintiff is shown for a total of no more than two or three minutes. She is limping in this video.
To summarize: The surveillance videos mainly show Plaintiff's sister in her daily activities. The footage of Plaintiff is limited to depictions of her (1) sweeping a porch for two minutes, then sitting down; (2) driving to three nearby stores, parking in front of each, and walking a few feet into and out of each business; (3) walking to her sister's truck, then walking in and out of a grocery store, and; (4) walking a few feet from the truck to a doctor's office, then walking back out to the truck.
We next consider Defendants' assertions that specific findings of fact are "either incomplete or not supported by the factual and medical evidence of record." Defendants assert that in Finding of Fact No. 12 the Commission "failed to make complete findings and disregarded competent evidence regarding the series of events which occurred between October, 2001 and January, 2002." Finding of Fact No. 12 states in relevant part that:
On October 25, 2001 . . . Plaintiff was shown on videotape sweeping the front porch for a few minutes, then sitting for a few minutes. On October 26, 2001, only Plaintiff's roommate appeared on the video[, which]. . . consisted of approximately twenty minutes of coverage, and Plaintiff's roommate was shown walking swiftly and fluidly. On December 29, 2001, Plaintiff was shown driving a white rental car. Plaintiff was also shown walking into and out of a check-cashing store. On January 10, 2002 . . . Plaintiff rode to a Harris Teeter grocery store with her roommate, who was driving. Plaintiff had a very noticeable limp when shown walking to and from the store. On May 10, 2002 . . . Plaintiff was shown walking into Raleigh Orthopaedic Clinic. Later that day she was shown being picked up from the clinic by her roommate. Plaintiff was shown limping and walking slowly while coming from the clinic.
Defendants argue that this finding fails to "tell the [full] story" and that the Commission "completely disregarded uncontradicted facts" regarding the video surveillance. Defendants assert that the Commission failed to discuss "Plaintiff's numerous activities" or "how she physically performed them[.]" Defendants note that the videotape made 29 December 2001 includes footage of Plaintiff getting into and out of her sister's car and driving her sister's car to run errands at an aquarium store, a check-cashing business, and a convenience store. Finding of Fact No. 12 discusses Plaintiff's driving, getting in and out of her sister's car, and walking into and out of a check-cashing store. The only "activities" not mentioned are Plaintiff's brief stops at an aquarium store and a convenience store. We conclude that the Commission sufficiently summarized Plaintiff's activities as shown on the videotape made 29 December 2001. This assignment of error is overruled.
Defendants argue that the Commission erred by failing to find that the videotape made 29 December 2001 shows Plaintiff walking "without a limp, without the use of a cane, without the assistance of her sister, and in a steady fashion." As discussed above, Plaintiff is not shown walking for more than thirty seconds at any one time on this video. Moreover, in Finding of Fact No. 11, the Commission sets out the dates that Bumgarner made surveillance videos and states that it "reviewed and considered all of this surveillance evidence." Therefore, we presume that the Commission's findings about the video surveillance reflect its own review of the significance of the footage. We conclude that the Commission did not err by failing to make this finding.
Finding of Fact No. 12 describes Plaintiff as walking with a "very noticeable limp" as she went to and from the grocery store on 11 January 2002. Defendants argue that this finding "completely disregarded" Bumgarner's testimony describing Plaintiff as limping, without using the adverbial phrase "very noticeably." Upon reviewing the videotapes, we conclude that the Commission's characterization of Plaintiff as walking with a "very noticeable" limp is supported by the evidence. This assignment of error is overruled.
Defendants also argue Finding of Fact No. 11 is erroneous because the Commission failed to include findings "regarding the investigator's clarification of plaintiff's identity." We disagree. Finding of Fact No. 11 states in relevant part:
11. On October 25 and 26, 2001, December 29, 2001, January 9, 10, and 11, 2002, and May 10, 2002, a private investigator . . . conducted surveillance[] of Plaintiffs daily activities. The Commission reviewed and considered all of this surveillance evidence. The private investigator admitted that he mistakenly identified Doretha Branch, Plaintiff's roommate, as Plaintiff in one set of his videotapes.
Bumgarner testified that he videotaped both Plaintiff and her sister, and conceded that some of the videotape segments were entirely or mostly footage of Plaintiff's sister. When questioned, he agreed that he was confused about which woman was the subject of his surveillance but that "at some point in the future" he learned which person was Plaintiff. Our review of the videotapes suggests that Bumgarner's confusion persisted at least into January 2002. As discussed above, most of the footage shot in January 2002 depicts Plaintiff's sister and a third person. These video segments were made after the footage of 29 December 2001 showing Plaintiff running a few errands. This record does not compel the finding urged by Defendants, that after 26 October 2001 Bumgarner had "clarified" which subject was identified as Plaintiff.
Moreover, Defendants have failed to persuade this Court that it makes any difference when or if Bumgarner realized which of the persons he had videotaped was the claimant. Defendants urge that Bumgarner's ability to identify Plaintiff from the videos and still photos has significance, but we conclude that no issue of fact was raised implicating Bumgarner's personal review of his videos. It is undisputed that Plaintiff testified before the Commission, that she identified herself in some of the surveillance materials, and that the Commission conducted its own review of the videotapes. The contents of the videotape have significance, but the state of mind of the investigator who recorded them has no bearing on whether Plaintiff is entitled to disability benefits. This assignment of error is overruled.
Defendants next challenge parts of Findings of Fact Nos. 14, 15, 17, 19, 24, and 26. We have reviewed the Defendants' contentions in this regard and conclude they are without merit.
Defendants object to the following:
Finding of Fact No. 14's finding that "Dr. Lawrence gave Plaintiff work restrictions and medications for pain management."
Finding of Fact No. 15's finding that "Plaintiff's activities as depicted in the still photographs and videotapes were not inconsistent with her demonstrated ability at the Carolina Back Institute."
Finding of Fact No. 17's finding that Dr. Lawrence "assigned Plaintiff a five percent permanency rating to the back as a result of her injury of September 21, 2000."
Finding of Fact No. 19's finding that "[t]hroughout her deposition testimony, Dr. Lawrence expressed doubt that the person in the pictures and videotapes shown to her was Plaintiff. At one point, Dr. Lawrence stated, `I'm not convinced that that is [Plaintiff].'. . . The Full Commission gives no weight to Dr. Lawrence's conditional opinion that if the person in the videotape is Plaintiff, she would have no work restrictions and an impairment rating of zero percent, due to Dr. Lawrence's stated doubt and confusion about whether the person depicted on the videotape was Plaintiff."
Finding of Fact No. 20's finding that on "February 11, 2002, Dr. Lawrence and the Carolina Back Institute released Plaintiff to return to work with restrictions of no lifting and restrictions on pulling, pushing, walking, standing, squatting, kneeling, bending and use of her lower extremities."
Finding of Fact No. 24's finding that "[t]he Full Commission gives greater weight to the opinions of Dr. Lawrence versus the opinions of Dr. Olson; however, the Full Commission gives no weight to Dr. Lawrence's conditional opinion that if the person depicted in the videotape was Plaintiff, then Plaintiff has no impairment."
Defendants assert that the "evidence presented in this matter completely contradicts the above-referenced findings of fact." We disagree, and conclude that competent evidence supports each of these findings.
We first consider the Commission's findings about work restrictions and impairment rating. The record includes Plaintiff's discharge summary from the Carolina Back Institute, signed by Dr. Lawrence and two other therapists. The discharge summary is dated 11 February 2002 and releases Plaintiff to return to work with restrictions to include no lifting and restrictions on pushing, pulling, use of lower extremities, walking, crawling, standing, squatting, bending, and kneeling. This supports Finding of Fact No. 20 that Dr. Lawrence had assigned Plaintiff work restrictions. The record also includes the letter dated 7 March 2002 from Dr. Lawrence to Defendants' claim manager, stating that she had learned that Plaintiff's injury was to her back and therefore "will change this impairment rating to 5% of the back[.]" This supports Finding of Fact No. 17 that Dr. Lawrence had assigned Plaintiff a 5% impairment rating to her back.
We next review the Commission's finding that the videotapes were not inconsistent with Plaintiff's medical records from the Carolina Back Institute. We conclude that the surveillance videos show nothing inconsistent with Plaintiff's testimony that her level of discomfort varied and that on "good days" she could stand for as long as forty-five minutes, while on a "bad day" she could only stand for fifteen minutes. She also testified that despite having a lot of pain, she tried to stay active as directed by her medical care providers. She was sometimes able to walk with just a limp, but at other times would feel "uncoordinated" and suffer "spasms" in her leg and on occasion her leg would "give out" and she would feel unsteady. The videos do not show Plaintiff running, dancing, engaged in difficult physical labor, or performing any activity requiring a level of physical exertion beyond what she testified she could do. They do not show Plaintiff driving for an extended time, and do not show her walking or standing for more than a minute at a time. Plaintiff never claimed to be bedridden, and nothing in the videotapes reveals her to be significantly more spry or active than she described in her testimony. In addition to the surveillance videos, the record includes Plaintiff's patient records from her treatment at the Carolina Back Institute. The Commission's review of these materials competently supports Finding of Fact No. 15's finding that these two sources of information about Plaintiff were "not inconsistent."
We next address the Commission's finding that Dr. Lawrence expressed doubts about whether Plaintiff was the person shown in the surveillance videos she was shown. In her deposition, Dr. Lawrence was questioned extensively about these videos and pointedly would not testify that any videotape she reviewed showed a person whom she recognized and believed to be Plaintiff. Eventually, counsel for Defendants directed her to "assume" that Plaintiff was "the person" Dr. Lawrence observed in "the video" showing footage recorded on 29 December 2001 and on 10 and 11 January 2002. However, of the four segments in this videotape, three depict surveillance of Plaintiff's sister, as well as Plaintiff, and this video also includes footage of a third person. Despite the varied contents of the videos, Defendants' examination of Dr. Lawrence about "the person" in "the video" never acknowledged that much of the footage was of Plaintiff's sister, never distinguished among the various people in the video and never asked Dr. Lawrence to confine her testimony to the footage shot on 29 December 2001, which was the only segment that shows Plaintiff alone. Thus, Defendants' questions were inherently vague and Dr. Lawrence's answers need not be assumed to refer to Plaintiff. In addition, even after being instructed to "assume" that she had seen Plaintiff in the video, Dr. Lawrence resisted:
[DEFENSE COUNSEL:] . . . [F]or purposes of today's questions and for purposes of your review of the videotape, did you assume that those photographs actually showed [Plaintiff]?
[DR. LAWRENCE:] I'm not convinced that that is [Plaintiff.]
[DEFENSE COUNSEL:] Well, I asked you to assume that, did I not?
. . . .
[DR. LAWRENCE:] I hear that you are telling me that I should assume that.
. . . .
[DEFENSE COUNSEL:] . . . [D]id you observe on that videotape the individual who I have asked you to assume . . . was [Plaintiff]?
[DR. LAWRENCE:] Based on your telling me that I should assume that that is her?
The above quoted and similar testimony supports Finding of Fact No. 19 that Dr. Lawrence expressed doubt during her deposition that the person she saw in the video was Plaintiff.
Regarding the Commission's finding that Dr. Lawrence offered only a "conditional" opinion regarding the physical condition of "the person in the videotape," Dr. Lawrence qualified her opinion with disclaimers such as "if, indeed, this is [Plaintiff] in the tape" then her opinion would be as stated. The word "conditional" means "imposing, depending on, or containing a condition." AMERICAN HERITAGE COLLEGE DICTIONARY 290 (3d ed. 1993). Dr. Lawrence's opinions depended on the condition that, contrary to her expressed doubt, the person she saw in the video was Plaintiff. This supports the Commission's characterization of Dr. Lawrence's opinion as conditional.
Defendants do not dispute the existence of any of this evidentiary support for the Commission's findings. Defendants instead cite the testimony they extracted from Dr. Lawrence that "if, indeed, this is [Plaintiff] in the tape, that she has no restrictions in work activities." Defendants also point to other evidence, unrelated to Dr. Lawrence's deposition, that tends to identify Plaintiff as the person shown in the video footage from 29 December and as one of the people depicted in the videotape containing that segment as well as the footage from 10 and 11 January 2002. Defendants argue that the conditional opinion Dr. Lawrence expressed in her deposition was "rendered unconditional" by other evidence identifying Plaintiff from the video. We disagree. Evidence identifying Plaintiff from the surveillance videos, no matter how great the quantity or how substantial the weight of such evidence, does not change the fact that Dr. Lawrence in fact expressed only a "conditional" opinion regarding the videotape. This assignment of error is overruled.
Defendants also argue that Plaintiff's actions as shown in the videotape of 29 December 2001 were inconsistent with her behavior and treatment as reported by the Carolina Back Institute. As discussed above, we conclude that the videotapes competently support the Commission's finding that the two were "not inconsistent." This assignment of error is overruled.
Defendants also mischaracterize the legal effect of Dr. Lawrence's conditional opinion that, "if, indeed" a person she saw on video was actually Plaintiff, than this person had no work restrictions. Dr. Lawrence's conditional opinion in no way changes the fact that in her formal discharge summary, she had given plaintiff work restrictions. At most, it would constitute conflicting evidence. "In passing upon issues of fact, the Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. . . . The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there be evidence to support a contrary finding." Hilliard, 305 N.C. at 595, 290 S.E.2d at 683-84 (internal citations omitted). This assignment of error is overruled.
Defendants next argue that Finding of Fact No. 22 is incomplete, on the grounds that the Commission "failed to make findings regarding Dr. Olson's opinion" regarding the cause of Plaintiff's symptoms and her need for work restrictions. Dr. Olson's opinions on these issues differed from those of Dr. Lawrence. Finding of Fact No. 22 includes a detailed recitation of Plaintiff's treatment with Dr. Olson and his deposition testimony. In Finding of Fact No. 24 the Commission stated that it "gives greater weight to the opinions of Dr. Lawrence versus the opinions of Dr. Olson[.]" Defendants' argument that the Commission should have made further findings on Dr. Olson's opinions essentially asks this Court to reweigh the evidence. "On appeal, this Court may not re-weigh the evidence or assess credibility." Martin v. Martin Bros. Grading, 158 N.C. App. 503, 506, 581 S.E.2d 85, 87 (2003) (citation omitted). This assignment of error is overruled.
Defendants next argue that the "medical testimony" fails to support the Commission's findings in Finding of Fact Nos. 23, 25, and 27, that Plaintiff suffers from chronic pain syndrome and remains disabled as a result of the 21 September 2000 accident. However, Defendants' arguments are addressed, not to the lack of any evidentiary support for these findings, but to the existence of evidence tending to contradict these findings. This assignment of error is overruled.
Defendants next argue that in its Conclusion of Law No. 1, the Industrial Commission "improperly placed the burden of proof on appellants to disprove the relationship between the incident and Plaintiff's alleged chronic pain[.]" We disagree.
Generally, an employee is entitled to compensation if she is disabled as a result of an injury by accident occurring in the course of employment. Rhinehart v. Market, 271 N.C. 586, 157 S.E.2d 1 (1967). "The term `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2009). "The burden is on the employee to establish both the existence and the degree of disability." Cross v. Falk Integrated Techs., Inc., 190 N.C. App. 274, 279, 661 S.E.2d 249, 253 (2008). Only after the employee has met her initial burden of proof does the burden then shift to the employer to rebut the evidence of disability. Coppley v. PPG Indus., Inc., 133 N.C. App. 631, 635, 516 S.E.2d 184, 187 (1999).
An employee may establish disability in one of four ways:
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).
In this case, the Commission, citing Russell, concluded as follows:
2. Plaintiff is currently disabled as a result of her compensable injuries. The medical evidence reveals that as a result of her compensable injury, (a) Plaintiff is medically unable to return to her pre-injury employment; (b) Plaintiff has work restrictions of no lifting, and restrictions on pulling, pushing, walking, standing, squatting, kneeling, bending and use of her lower extremities; (c) Plaintiff needs vocational assistance to help her locate suitable employment due to her physical limitations related to her compensable injury; and (d) Plaintiff takes prescribed medications for chronic pain. Although Plaintiff may be able to do some work, it is futile for her to seek work without vocational assistance to help her locate suitable employment considering her severe physical limitations due to her compensable injury and her limited education and training. Plaintiff has not refused vocational assistance offered by Defendants.
It is clear from this conclusion that the Commission determined that Plaintiff met her burden of proving disability under the third method enumerated in Russell.
Defendants argue, however, that the following conclusion of law shows that the Commission incorrectly shifted the burden of proof to Defendants to prove disability:
1. Plaintiff sustained an admittedly compensable injury by accident to her back and chest on September 21, 2000, and suffers from chronic pain as a result of the accident. N.C. Gen. Stat. § 97-2(6). Defendants have failed to present any expert opinion testimony that Plaintiff's back condition and chronic pain syndrome was caused by anything other than her September 21, 2000, accident. Perez v. American Airlines/AMR Corp., 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. review improvidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006) and Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
Because the Commission also determined that Plaintiff met her burden of proving disability, the burden then shifted to Defendants to rebut the evidence of disability. Coppley, 133 N.C. App. at 635, 516 S.E.2d at 187. The Commission's conclusion that Defendants "failed to present any expert opinion testimony that Plaintiff's back condition and chronic pain syndrome was caused by anything other than her September 21, 2000, accident" addresses Defendant's failure to successfully rebut Plaintiff's evidence establishing her disability and its cause.
Defendants argue further that "Parsons did not hold that a defendant has the burden of disproving a causal connection between an accident and an employee's claim of resulting pain[.]" In Parsons, the "parties disagree[d] over one crucial factor: who has the burden to prove whether plaintiff's current medical problems and the compensable injury are causally related for purposes of awarding additional medical compensation." Parsons, 126 N.C. App. at 541, 485 S.E.2d at 868. This Court noted that the plaintiff had an initial burden to prove a causal relationship between her compensable accident and her need for medical treatment, and held that plaintiff had "met this burden, as evidenced by the Commission's initial opinion and award, from which there was no appeal[.]"
In the instant case, the parties stipulated that Plaintiff suffered a compensable injury on 21 September 2000. Moreover, on 9 October 2000 Defendants submitted an Industrial Commission Form 63, "Notice to Employee of Payment of Compensation Without Prejudice to Later Deny the Claim." A Form 63 may be submitted pursuant to N.C. Gen. Stat. § 97-18(d) (2009), which provides in relevant part that an employer or insurer who is uncertain whether an employee's claim is compensable "may initiate compensation payments without prejudice and without admitting liability." The statute further states that, following submission of a Form 63:
(d) If the employer or insurer does not contest the compensability of the claim or its liability therefor within 90 days from the date it first has written or actual notice of the injury or death, or within such additional period as may be granted by the Commission, it waives the right to contest the compensability of and its liability for the claim under this Article. . . .
In the instant case, following submission of a Form 63, "Defendants did not contest either the claim or their liability within the statutory period set forth in N.C. Gen. Stat. § 97-18(d). Therefore, plaintiff's entitlement to compensation became an award of the Commission pursuant to N.C. Gen. Stat. § 97-82(b)." Devlin v. Apple Gold, Inc., 153 N.C. App. 442, 443, 570 S.E.2d 257, 259 (2002) (citation omitted). This Court has held:
Where a plaintiff's injury has been proven to be compensable, there is a presumption that the additional medical treatment is directly related to the compensable injury. The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury.
Perez, 174 N.C. App. at 135, 620 S.E.2d at 292 (citing Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999); and Parsons, 126 N.C. App. at 541, 485 S.E.2d at 868). Accordingly, Plaintiff was entitled to a presumption that her medical treatment was related to her compensable injury.
Defendants also argue that "the medical evidence establishes that Plaintiff does not suffer from any form of pain . . . caused by the accident." Defendants do not dispute the existence of record evidence showing that on 7 March 2002 Dr. Lawrence gave Plaintiff "an impairment rating of 5% of the back with the diagnosis of complex regional pain syndrome versus conversion disorder that likely occurred as a result of her back injury." In her April 2003 deposition, Dr. Lawrence testified that she still held that opinion. In support of their argument, Defendants cite to excerpts from the deposition testimony of Drs. Lawrence and Olson, arguably contradicting this evidence. As discussed above, the Commission's findings "are conclusive on appeal when supported by competent evidence even though there is evidence to support contrary findings." Dowdy v. Fieldcrest Mills, 308 N.C. 701, 705, 304 S.E.2d 215, 218 (1983) (citation omitted). This assignment of error is overruled.
Defendants' next argument is that the Industrial Commission committed reversible error in making Conclusions of Law Nos. 1, 2, 4, 5, and 6, and in its Award Nos. 1 through 6. Defendants argue that the Commission failed to properly apply "established legal precedent" to the medical evidence. We disagree.
Defendants do not dispute that Dr. Lawrence diagnosed Plaintiff with "an impairment rating of 5% of the back with the diagnosis of complex regional pain syndrome versus conversion disorder that likely occurred as a result of her back injury." Instead, they again direct our attention to evidence that they contend contradicts Dr. Lawrence's diagnosis. This assignment of error is overruled.
Finally, Defendants argue that the Industrial Commission erred by awarding Plaintiff costs and attorney's fees.
Defendants argue that, "pursuant to Buck v. Procter & Gamble, 58 N.C. App. 804, 806, 295 S.E.2d 243, 245 (1982), cert. denied, 308 N.C. 543, 304 S.E.2d 236 (1983), the Full Commission was not permitted to award attorney's fees for claimant because there was no longer an appeal before the Industrial Commission." D'Aquisto v. Mission St. Joseph's Health Sys., ___ N.C. App. ___, ___, 680 S.E.2d 249, 253 (2009). In D'Aquisto, this Court held:
Employer's reliance on Buck is misplaced because the reasoning that employer cites is no longer good law. In Buck, our Court held that, pursuant to Taylor v. J. P. Stevens, 57 N.C. App. 643, 292 S.E.2d 277 (1982) ("Taylor I"), the Commission . . . did not have discretion to award attorney's fees for services rendered before an appellate court. .. . [I]n Taylor v. J. P. Stevens Co., 307 N.C. 392, 398, 298 S.E.2d 681, 685 (1983) ("Taylor II"), our Supreme Court concluded that the Court in Taylor I erred in holding that the Commission does not have the authority to award attorney's fees for work done in furtherance of an appeal. As far as its reliance on Taylor I, the proposition that employer cites in Buck is no longer valid.
Id. at ___, 680 S.E.2d at 253-54.
"This Court reviews the Commission's ruling on a motion for attorney's fees for an abuse of discretion." Cox v. City of Winston-Salem, 171 N.C. App. 112, 119, 613 S.E.2d 746, 750 (2005) (citing Taylor II). In the instant case, Defendants do not argue that the Commission abused its discretion, and we find no abuse. This assignment of error is overruled.
For the reasons discussed above, we conclude that the Commission did not err and that its Opinion and Award should be
Affirmed.
Judges STEPHENS and HUNTER, JR. concur.
Report per Rule 30(e).