KAREN M. HARLLEE, Plaintiff v. FREDERICK E. HARLLEE, III, Defendant

No. COA01-357

(Filed 18 June 2002)

**1. Marriage— premarital agreement—condition precedent**

The trial court erred by concluding as a matter of law that defendant's obligation to pay plaintiff $10,000 on the day of the marriage was a condition precedent to the effectiveness of the

**HARLLEE v. HARLLEE**

[151 N.C. App. 40 (2002)]

parties' premarital agreement. Absent clear and plain language, provisions of a contract will ordinarily not be construed as conditions precedent.

**2. Marriage— premarital agreements—consideration**

Defendant's failure to pay plaintiff $10,000 upon their marriage did not render their premarital agreement ineffective for lack of consideration. Marriage itself is sufficient consideration for a premarital agreement; the additional consideration recited in the agreement, including the payment of $10,000, constituted a promise to render some performance in the future and the failure to perform that promise did not invalidate the agreement.

**3. Appeal and Error— cross-assignment of error—required**

Arguments which would have provided an alternative basis for upholding a premarital agreement were not preserved for appellate review where plaintiff did not cross-assign error pursuant to Rule 10(d) to the trial court's failure to enter judgment on these alternative grounds. Moreover, this is not a case in which suspending the appellate rules would prevent manifest injustice or benefit the public interest.

Appeal by defendant from order entered 2 April 1997 by Judge Thomas G. Foster, Jr., and order and judgment entered 11 July 2000 by Judge Joseph E. Turner in Guilford County District Court. Heard in the Court of Appeals 22 January 2002.

*Hill, Evans, Duncan, Jordan & Davis, PLLC, by Charles W. Coltrane and Joseph P. Gram, for plaintiff-appellee.*

*Anderson Korzen & Associates, P.C., by John J. Korzen, and Douglas, Ravenel, Hardy, Crihfield & Hoyle, L.L.P., by G.S. Crihfield, for defendant-appellant.*

CAMPBELL, Judge.

Defendant husband appeals from an order declaring the parties' premarital agreement invalid and unenforceable. Defendant also appeals from the trial court's subsequent equitable distribution of the parties' marital property. Defendant and plaintiff wife were married on 2 March 1984 and separated on 30 September 1991. A judgment of absolute divorce was entered on 10 January 1994.

HARLLEE v. HARLLEE

[151 N.C. App. 40 (2002)]

On 3 February 1984, one month prior to their marriage, defendant and plaintiff entered into a purported premarital agreement. The premarital agreement, in pertinent part, states:

WHEREAS, the Parties to this Agreement intend to marry one another and are making this Agreement in contemplation of becoming husband and wife; and

WHEREAS, both parties are individually possessed of certain Separate Property, and both acknowledge that they played no role in the accumulation of the other's Separate Property; and

WHEREAS, Husband has previously been married to another; and

WHEREAS, the Wife has never been previously married; and

WHEREAS, the parties desire to contract with each other concerning matters of financial management during the term of their marriage; and

WHEREAS, the parties are aware of the laws concerning the disposition of marital and separate property under conditions of togetherness of [sic] apartness, life or death; and

WHEREAS, the parties desire to govern said dispositions by their own agreement and not by the laws of any state or country;

THEY, NOW, THEREFORE, for valuable consideration, and with the express intention on the part of both parties that this Agreement be legally binding, they hereby stipulate and agree as follows:

The sole consideration for this Agreement shall be as follows:

(1) The contemplated marriage between the parties; and

(2) The mutual promises and covenants contained in this Agreement; and

(3) The sum of TEN THOUSAND DOLLARS ($10,000.00), to be paid by husband to wife in the manner following: On the day of the marriage.

. . . .

Each party agrees that the property described hereafter shall remain the Separate Property of the other:

(a) All property, whether real or personal, belonging to the other party at the commencement of their marriage; and

(b) All property at any time acquired by the other party by gift, devise, bequest or inheritance, including gifts from one party to the other; and

(c) All interest, dividends, rents, profits or other income at any time acquired from the aforestated Separate Property, or at any time acquired from property purchased with Separate Property, or any property substituted or exchanged for Separate Property; and

(d) All appreciation in value of the aforesaid Separate Property, whether attributable to market conditions or to the skills and efforts of the owner thereof; and

(e) All property acquired by the other party in his/her separate name while living together outside the marital relationship; and

(f) A recovery or claim for pain and suffering arising from a personal injury suffered by the other party; and

. . . .

EARNINGS DURING MARRIAGE—SEPARATE PROPERTY

The parties agree that all earnings and accumulations resulting from personal services, skills, efforts and work, together with all property acquired and income derived therefrom, shall be the Separate Property of the Party to whom the earnings and income are attributable.

. . . .

On 29 January 1992, plaintiff filed the instant action seeking, *inter alia,* a divorce from bed and board, temporary and permanent alimony, and an equitable distribution of marital property. Defendant was granted two extensions of time in which to file an answer to plaintiff's complaint. The second extension was up to and including 14 May 1992. According to the record on appeal, no further action was taken in this case until on or about 10 August 1994, when defendant filed a motion for summary judgment on plaintiff's equitable distribution claim based on the aforementioned premarital agreement. In this motion, defendant asserted that "[t]he Pre-Marital Agreement conclusively disposes of any property acquired by either party prior to the

marriage, during the marriage, or subsequent to the separation of the two parties." On 15 September 1994, defendant filed an answer to plaintiff's complaint denying the essential allegations thereof and asserting the premarital agreement as an affirmative defense to plaintiff's claims. Approximately forty minutes after the filing of defendant's answer, plaintiff filed a response to defendant's motion for summary judgment. Plaintiff contended that defendant had failed to plead the premarital agreement as an affirmative defense in an answer as required by Rule 8 of the North Carolina Rules of Civil Procedure, that defendant had failed to file an answer, and that the time for filing an answer had expired. Based on these contentions, plaintiff asked the trial court to deny defendant's motion for summary judgment and rule that defendant could not rely on the premarital agreement as an affirmative defense to plaintiff's claims.

On 30 May 1996, based on its review of the record, the trial court found a genuine issue of material fact as to the validity of the premarital agreement, concluded that defendant was not entitled to judgment as a matter of law, and denied defendant's motion for summary judgment.

On 18 November 1996, the trial court held another hearing "to determine whether Defendant [could] assert as an affirmative defense [the] purported premarital agreement executed by the parties, and if so, whether such document [was] a valid and enforceable contract." On 2 April 1997, the trial court entered an order containing the following findings of fact:

1. The parties executed a paper writing entitled "PRE-MARITAL AGREEMENT" on February 3, 1984 (hereinafter referred to as the "paper writing"), which provided that the sole consideration for the paper writing was (1) the contemplated marriage between the parties; (2) the mutual promises and covenants contained in this paper writing; and (3) the sum of ten thousand dollars to be paid by Defendant to Plaintiff on the day of the marriage.

2. As admitted by Defendant, Defendant did not pay to Plaintiff the aforesaid ten thousand dollars on or before the date of the marriage.

3. Although Defendant paid sums of money to Plaintiff after the date of marriage, such sums of money were not toward the ten thousand dollars due under the paper writing, as such payments of money were neither designated as payment toward such ten

thousand dollar amount due nor accepted as payment toward such ten thousand dollar amount due.

4. Plaintiff at no time waived Defendant's obligation to perform under the paper writing, such obligation being to pay Plaintiff the ten thousand dollar amount due on the day of the marriage.

5. At the close of Defendant's evidence, Plaintiff moved for a dismissal on the ground that upon the facts and law Defendant had shown no right to relief.

Based on its findings of fact, the trial court made the following pertinent conclusions of law:

2. Defendant's obligation to pay Plaintiff ten thousand dollars on the date of the marriage constitutes a condition precedent which did not occur and which was not met by Defendant; therefore, Plaintiff does not have to perform under the paper writing, and no remedies are available to Defendant under the paper writing.

3. Because Defendant did not pay Plaintiff the ten thousand dollars on the day of the marriage, either before or after the marriage ceremony, the paper writing fails for lack of adequate consideration and is unenforceable as no contract was formed.

4. Plaintiff at no time waived Defendant's obligation to perform under the paper writing, such obligation being, inter alia, to pay Plaintiff the ten thousand dollar amount due on the day of the marriage.

. . . .

6. The parties' execution of the paper writing is ineffective as an affirmative defense in this action and does not constitute a bar to any of Plaintiff's claims in this action.

Based on its findings and conclusions, the trial court ordered that judgment be rendered for plaintiff as follows:

1. The paper writing entitled "PRE-MARITAL AGREEMENT" executed by the parties on February 3, 1984, is invalid and is not an enforceable contract; and

2. The parties' execution of the paper writing entitled "PRE-MARITAL AGREEMENT" on February 3, 1984, is ineffective as an affirmative defense in this action and does not constitute a bar to any of Plaintiff's claims in this action.

HARLLEE v. HARLLEE

[151 N.C. App. 40 (2002)]

Plaintiff's equitable distribution claim was heard on 9-10 June 1999. On 14 July 2000, the trial court entered a judgment and order of equitable distribution awarding plaintiff, *inter alia*, a distributive award in the amount of $248,584.00. Defendant has appealed from the trial court's determination that the parties' premarital agreement is invalid and unenforceable and from the trial court's subsequent equitable distribution of the marital property. On appeal, defendant contends that the trial court erred (1) in concluding that the payment of $10,000.00 from defendant to plaintiff was a condition precedent to the validity and enforceability of the premarital agreement, and (2) in concluding that the premarital agreement failed for lack of adequate consideration. The dispositive issue is what effect should be given to defendant's obligation to pay plaintiff $10,000.00.

We begin by reviewing some general principles concerning the validity of premarital agreements. "It is well settled in this jurisdiction that a man and woman contemplating marriage may enter into a valid contract with respect to the property and property rights of each after the marriage, and such contracts will be enforced as written." *In re Estate of Loftin*, 285 N.C. 717, 720, 208 S.E.2d 670, 673 (1974); *see also* N.C. Gen. Stat. § 52-10 (2001). Pursuant to N.C.G.S. § 52-10, the parties to such premarital agreements may "release and quitclaim such rights which they might respectively acquire . . . by marriage in the property of each other; and such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estate so released." N.C.G.S. § 52-10. Since 1965, N.C.G.S. § 52-10 has made it clear that such premarital agreements are valid "with or without a valuable consideration." N.C.G.S. § 52-10. Prior to the passage of N.C.G.S. § 52-10, the law in this State recognized that the marriage itself was sufficient consideration for a premarital agreement, and the law enforced the agreement so long as the marriage took place. 1 Suzanne Reynolds, *Lee's North Carolina Family Law* § 1.12(B), at 35-36 (5th ed. 1993).

Although the Uniform Premarital Agreement Act ("the Act") is inapplicable here, we note that it explicitly dispenses with the need for consideration as a prerequisite for the enforcement of premarital agreements entered into on or after the Act's effective date, 1 July 1987. N.C. Gen. Stat. § 52B-3 (2001).

The principles of construction applicable to contracts also apply to premarital agreements, *see Turner v. Turner*, 242 N.C. 533, 539, 89 S.E.2d 245, 249 (1955); *Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989), and premarital agreements "are to be con-

strued liberally so as to secure the protection of those interests which from the very nature of the instrument it must be presumed were thereby intended to be secured." *Stewart v. Stewart*, 222 N.C. 387, 392, 23 S.E.2d 306, 309 (1942). These principles of construction guide our review of defendant's assignments of error.

[1] Defendant first contends that the trial court erred in concluding as a matter of law that the defendant's obligation to pay plaintiff $10,000.00 was a condition precedent to the effectiveness of the parties' premarital agreement.

In *Cargill, Inc. v. Credit Assoc., Inc.*, 26 N.C. App. 720, 217 S.E.2d 105 (1975), this Court defined "conditions precedent" as

'those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.' 3A Corbin, Contracts § 628 at 16 (1960). On the other hand, one who makes a promise expresses an intention that some future performance will be rendered and gives the promisee assurance of its rendition.

*Id.* at 722-23, 217 S.E.2d at 107-08; *see also Craftique, Inc. v. Stevens and Co., Inc.*, 321 N.C. 564, 566, 364 S.E.2d 129, 131 (1988). Conditions precedent are not favored by the law, *Jones v. Palace Realty Co.*, 226 N.C. 303, 305-06, 37 S.E.2d 906, 907-08 (1946), and "when such operative words can be construed as either a promise or a condition, the presumption is in favor of a promise." *Craftique*, 321 N.C. at 567, 364 S.E.2d at 131. Absent clear and plain language, provisions of a contract will ordinarily not be construed as conditions precedent. *Construction Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 118, 123 S.E.2d 590, 596 (1962); *Stewart v. Maranville*, 58 N.C. App. 205, 206, 292 S.E.2d 781, 782 (1982). However, the use of language such as "when," "after," and "as soon as" clearly indicates that a promise will not be performed except upon the happening of a stated event, i.e., a condition precedent. *Craftique*, 321 N.C. at 567, 364 S.E.2d at 131 (citing *Jones*, 226 N.C. at 306, 37 S.E.2d at 908).

In the instant case, the premarital agreement does not contain any language plainly and clearly indicating that the payment of $10,000.00 from defendant to plaintiff was a condition precedent to the effectiveness of the agreement. Rather, defendant's obligation to pay plaintiff $10,000.00 is listed as the third of three items that pur-

portedly make up the "sole consideration" for the premarital agreement. The other items of consideration are (1) the contemplated marriage of the parties, and (2) the mutual promises and covenants contained in the agreement. We reiterate that the only consideration necessary to support the premarital agreement was the marriage of the parties. *See* 1 Reynolds, *supra* at 35-36.

In determining whether defendant's obligation to pay plaintiff $10,000.00 is a condition or a promise, we keep in mind that premarital agreements are to be construed liberally so as to protect the interests the parties intended to be protected by the very nature of the instrument itself. *Stewart*, 222 N.C. at 392, 23 S.E.2d at 309. Here, the premarital agreement states that "both parties are individually possessed of certain Separate Property, and both acknowledge that they played no role in the accumulation of the other's Separate Property," that "the parties are aware of the laws concerning the disposition of marital and separate property under conditions of togetherness of [sic] apartness, life or death," and that "the parties desire to govern said dispositions by their own agreement and not by the laws of any state or country." The premarital agreement further states that it is entered into "with the express intention on the part of both parties that this Agreement be legally binding." These statements exhibit a clear intention on the part of the parties to dispose of their property upon dissolution of their marriage through the provisions of their premarital agreement rather than through equitable distribution. Premarital agreements having this effect are expressly allowed by N.C. Gen. Stat. § 50-20(d) (2001). Indeed, the ability to control the disposition of property upon the dissolution of a marriage appears to be the primary purpose of most, if not all, premarital agreements.

In the instant case, the intent of the parties to dispose of their property through the premarital agreement was frustrated by the trial court's conclusion that defendant's obligation to pay plaintiff $10,000.00 was a condition precedent to the effectiveness of the premarital agreement. In light of the presumption in favor of promises over conditions, *see Craftique*, 321 N.C. at 567, 364 S.E.2d at 131, and the absence of language clearly establishing that defendant's obligation to pay plaintiff was a condition precedent to the effectiveness of the premarital agreement, *see Stewart*, 58 N.C. App. at 206, 292 S.E.2d at 782, we hold that the trial court erred in its determination. We conclude that defendant's obligation to pay plaintiff $10,000.00 on the day of marriage was simply a promise, and not a condition precedent to the effectiveness of the premarital agreement.

[2] The trial court having provided multiple grounds to support its determination that the premarital agreement was not enforceable, we must address defendant's second assignment of error. Defendant contends that the trial court also erred in concluding that the premarital agreement failed for lack of adequate consideration.

As earlier noted, premarital agreements are effective with or without valuable consideration, and the marriage itself is sufficient consideration to support a premarital agreement. *See* N.C. G.S. § 52-10; 1 Reynolds, *supra* at 35-36. Nonetheless, the trial court concluded that defendant's failure to pay plaintiff the $10,000.00 amounted to a failure of adequate consideration. We disagree with this conclusion.

Plaintiff cannot claim a total failure of consideration because she and defendant were married, and the marriage itself is sufficient consideration for the premarital agreement. *See* 1 Reynolds, *supra* at 35-36. Therefore, this case presents a partial failure of consideration. However, inadequate consideration, as opposed to the lack of consideration, is not sufficient grounds to invalidate a contract. *Delp v. Delp*, 53 N.C. App. 72, 76, 280 S.E.2d 27, 30 (1981). In order to defeat a contract for failure of consideration, the failure of consideration must be complete and total. *Id.* (citing *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 722, 127 S.E.2d 539, 543 (1962)). Here, the marriage of the parties was sufficient consideration to support the premarital agreement. The additional consideration recited in the premarital agreement, including defendant's obligation to pay plaintiff $10,000.00 on the day of the marriage, constituted a promise on defendant's part to render some performance in the future. Defendant's failure to perform said promise did not invalidate and render ineffective the premarital agreement. Therefore, we find merit in defendant's second assignment of error.

In conclusion, we hold that defendant's obligation to pay plaintiff $10,000.00 was a promise, the breach of which subjected defendant to liability for breach of contract. However, the failure of defendant to pay plaintiff the $10,000.00 did not operate to invalidate the premarital agreement entered into between the parties.

[3] In plaintiff-appellee's brief, she attempts to argue that the trial court's order declaring the premarital agreement invalid and unenforceable can be affirmed on either of two alternative grounds: (1) that defendant did not timely assert the premarital agreement as an affirmative defense and/or (2) that two provisions of the premarital

agreement violate public policy. However, the only conclusions of law set forth by the trial court to support its order declaring the premarital agreement invalid and unenforceable were that defendant's obligation to pay plaintiff $10,000.00 was a condition precedent which had not occurred, and that the premarital agreement failed for a lack of adequate consideration.

The scope of this Court's review on appeal is limited to a consideration of those assignments of error set out in the record on appeal in accordance with Rule 10 of the Rules of Appellate Procedure. N.C. R. App. P. 10(a) (2002). In the instant case, the only assignments of error set out in the record on appeal are those brought forward and argued in defendant-appellant's brief concerning the trial court's conclusions that defendant's obligation to pay plaintiff $10,000.00 was a condition precedent and that the premarital agreement failed for a lack of adequate consideration. However, appellees, such as plaintiff in the instant case, are not prevented by the Rules of Appellate Procedure from presenting issues for this Court's review in addition to those properly set out in the appellant's assignments of error.

N.C. R. App. P. 10 (d) (2002) provides, in pertinent part:

(d) *Cross-assignments of error by appellee.* Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

In *Carawan v. Tate*, 304 N.C. 696, 286 S.E.2d 99 (1982), the Supreme Court explained the purpose of Rule 10(d) as follows:

Rule 10(d) provides protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based.

*Id.* at 701, 286 S.E.2d at 102; *accord Stevenson v. Dept. of Insurance*, 45 N.C. App. 53, 56-57, 262 S.E.2d 378, 380 (1980).

N.C. R. App. P. 28(c) operates in conjunction with Rule 10(d) by allowing an appellee, without having taken appeal, to "present for review, by stating them in his brief, any questions raised by cross-assignments of error under Rule 10(d)." N.C. R. App. P. 28(c) (2002).

In addition to cross-assignments of error pursuant to Rule 10(d), another tool by which an appellee may present additional issues for this Court's review is the filing of a cross-appeal. However, there is an important distinction between a cross-assignment of error and a cross-appeal. Whereas cross-assignments of error under Rule 10(d) are the proper procedure for presenting for review any action or omission of the trial court which deprives the appellee of an *alternative* basis in law for *supporting* the judgment, order, or other determination from which appeal has been taken; the proper procedure for presenting alleged errors that purport to show that the judgment was erroneously entered and that an altogether different kind of judgment should have been entered is a cross-appeal. *St. Clair v. Rakestraw*, 67 N.C. App. 602, 607, 313 S.E.2d 228, 231-32 (1984), *rev'd in part on other grounds*, 313 N.C. 171, 326 S.E.2d 19 (1985); *see also Mann Contr'rs, Inc. v. Flair With Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 775-76, 522 S.E.2d 118, 121 (1999); *Cox v. Robert C. Rhein Interest, Inc.*, 100 N.C. App. 584, 397 S.E.2d 358 (1990); *Stanback v. Westchester Fire Ins. Co.*, 68 N.C. App. 107, 314 S.E.2d 775 (1984).

In the instant case, the additional arguments raised in plaintiff-appellee's brief, if sustained, would provide an *alternative* basis for upholding the trial court's determination that the premarital agreement is invalid and unenforceable. However, plaintiff failed to cross-assign error pursuant to Rule 10(d) to the trial court's failure to render judgment on these alternative grounds. Therefore, plaintiff has not properly preserved for appellate review these alternative grounds. *See Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 122, 516 S.E.2d 879, 883 (1999); N.C. R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10.")

Finally, we are aware of this Court's power pursuant to Rule 2 to suspend or vary the requirements or provisions of our Rules of Appellate Procedure, including Rule 10. However, the instant case does not present a situation where doing so would "prevent manifest injustice to a party," or benefit "the public interest." N.C. R. App. P. 2 (2002). Therefore, we do not address the additional arguments raised in plaintiff-appellee's brief.

As we have determined that the trial court erred in invalidating the premarital agreement for the reasons stated herein, we reverse both the trial court's order entered 2 April 1997 and its subsequent

equitable distribution of the parties' marital property, and remand the cause for distribution pursuant to the Equitable Distribution Act to the extent any properties the parties may own are not covered by the premarital agreement. *See Howell,* 96 N.C. App. at 532, 386 S.E.2d at 620.

Reversed and remanded.

Chief Judge EAGLES and Judge McCULLOUGH concur.