BD. OF DIRS. OF QUEENS TOWERS HOMEOWNERS' ASSOC. v. ROSENSTADT

[214 N.C. App. 162 (2011)]

BOARD OF DIRECTORS OF QUEENS TOWERS HOMEOWNERS' ASSOCIATION, INC.,
AND QUEENS TOWERS HOMEOWNERS' ASSOCIATION, INC., PLAINTIFFS,
BERNADETTE ROSENSTADT, INITIAL TRUSTEE OF THE ROSENSTADT FAM-
ILY TRUST; AND BRENDA BISHOP, DEFENDANTS

No. COA10-1190

(Filed 2 August 2011)

1. **Associations—homeowners—condominium—individual
   balconies—repair—common area**

   The trial court correctly denied summary judgment for
   defendant-owners and correctly granted it for plaintiff homeowners'
   association in a declaratory judgment action to determine
   whether balconies were common areas for purposes of repair. As
   defined by the Declaration and the Unit Ownership Act, these bal-
   conies were not part of the unit because they were located on the
   exterior of the building, were not specified by the Declaration as
   accessory spaces within the units, and did not provide direct
   access to any common areas or thoroughfares.

2. **Associations—homeowners—condominium balconies—lim-
   ited common areas—awnings**

   The condominium balconies in this case were limited com-
   mon areas where the balconies were not specified as part of the
   units but were accessible only through individual units by the
   unit owners. The Board was responsible for the administration
   and operation of the limited common areas and acted within
   its authority when it elected to install awnings and charge the
   unit owners.

3. **Appeal and Error—cross-assignments of error—no longer
   used—proposed issues on alternative basis or separate
   cross appeal**

   The merits of cross-assignments of error were not considered
   on appeal because cross-assignments of error no longer exist.
   Appellees can instead denominate proposed issues on appeal as
   an alternative basis in law; however, the alleged error here did
   not deprive plaintiffs of an alternative basis in law for supporting
   the judgment. The alleged error should have been separately pre-
   served and made the basis of a separate cross-appeal.

BD. OF DIRS. OF QUEENS TOWERS HOMEOWNERS' ASSOC. v. ROSENSTADT

[214 N.C. App. 162 (2011)]

Appeal by defendants from judgment entered 28 May 2010 by Judge F. Lane Williamson in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 February 2011.

*Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., by Michelle Price Massingale, for plaintiffs.*

*Myers Law Firm, PLLC, by R. Lee Myers and Matthew R. Myers, for defendants.*

ELMORE, Judge.

Bernadette Rosenstadt, Initial Trustee of the Rosenstadt Family Trust, and Brenda Bishop (defendants) appeal from an order in favor of the Board of Directors of Queens Towers Homeowners Association and Queens Towers Homeowners Association, Inc. (plaintiffs), granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment. After careful review, we find no error.

## I. Background

The condominium development known as Queens Towers (condominium) was established on 2 January 1980 upon filing the "Declaration of Condominium for Queens Towers" (declaration). The Queens Towers Homeowners' Association (HOA) is a nonprofit corporation organized under the laws of the State of North Carolina and governed by a board of directors (board). The board is responsible for the administration of the condominium, including "[o]peration, care, upkeep and maintenance of the common areas and facilities." The owners of the condominium units are responsible for upkeep, maintenance, and repair of individual units. The condominium, HOA, and unit owners are subject to the terms of the declaration and HOA by-laws, as well as the Unit Ownership Act. The declaration describes the boundaries of the units, common areas, and limited common areas of the condominium.

Defendants Rosenstadt and Bishop are the record title owners of units 307 and 210, respectively. A balcony is attached to each unit for the use and benefit of the unit owner, and is accessible through a sliding glass door. In August 2008, the board voted to purchase and install awnings and skirts (awnings) outside the balconies adjacent to designated units, including those owned by defendants. Installation began in October 2008, and the board notified defendants of its intent to install the awnings. Defendants refused to allow installation.

Plaintiffs filed a complaint, seeking, *inter alia*, injunctive relief prohibiting defendants from denying access to the balconies. Defendants filed a counterclaim seeking an order that plaintiffs cease and desist from installing the awnings. Both parties filed motions for summary judgment. The trial court granted plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment. The court further granted a stay in favor of defendants, pending the outcome of this appeal.

## II. Discussion

A. Standard of review.

[1] Defendants contend that the trial court erred in granting summary judgment in favor of plaintiffs. We disagree.

The "standard of review of an appeal from summary judgment is de novo." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Id.* (quotations and citation omitted). "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial." *Id.* (citation omitted). The judgment shall be granted if the evidence shows "that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

B. Unit Ownership Act, declaration, and by-laws.

By filing the declaration, the owner of Queens Towers submitted the condominium to the Unit Ownership Act (the Act). The Act strictly binds unit owners and the HOA (including the board) to the declaration and by-laws. "Failure to comply with any of the same shall be grounds for an action to recover sums due, for damages or injunctive relief, or both[.]" N.C. Gen. Stat. § 47A-10 (2009).

This Court must determine whether the board possesses the authority to install awnings adjacent to defendants' balconies. This determination turns on whether the balcony is considered part of the unit, which falls under the discretion and control of the unit owner, or part of the common area or limited common area, which falls under the authority of the board. To accomplish this, we must look to the Act and the declaration, including its by-laws, to determine the proper classification.

The fundamental rules of construction require that the parties' intent be determined by reconciling all the terms of the instrument. *Callaham v. Arenson*, 239 N.C. 619, 625, 80 S.E.2d 619, 624 (1954). "[R]estrictive covenants clearly expressed may not be enlarged by implication or extended by construction. They must be given effect and enforced as written." *Id.* (citations omitted).

## C. Unit.

The declaration defines a "unit" as:

> the space bounded by the undecorated and/or unfinished *interior* surfaces of its perimeter walls, load bearing walls, lowermost floors, uppermost ceilings, windows and window frames, doors and door frames. Each unit includes both portions of the building *within such boundaries,* and *the space so encompassed,* including without limitation the decorated surfaces, including paint, lacquer, varnish, wallpaper, paneling, tile, carpeting and any other finishing materials applied to *interior walls,* doors, floors and ceilings, and *interior surfaces* of permanent walls, *interior* non-load-bearing walls, windows, doors, floors and ceilings.

(Emphasis added.) The universal language used throughout the description is "interior." However, the balconies at issue are located on the *exterior* of the building and not within the boundaries of the interior surfaces and walls, as specified in the declaration.

The Act defines a unit as "an enclosed space consisting of one or more rooms," but defers to the declaration to incorporate additional discretionary features. N.C. Gen. Stat. § 47A-3(12) (2009). The Act specifies that "unit" include "accessory spaces and areas as may be described in the declaration, such as garage space, storage space, balcony, terrace or patio, *provided it has a direct exit to a thoroughfare or to a given common space leading to a thoroughfare." Id.* (emphasis added).

First, the declaration does not specify any accessory spaces, such as balconies or terraces, to be included as part of the units. Second, the Act predicates accessory spaces on the existence of a "direct exit" to a common space or thoroughfare. Here, the balconies are only accessible through sliding glass doors located in the individual units and do not provide access to any other area of the property.

Defendants argue that the square footage of their units includes balconies, thereby incorporating balconies into the definition of "units." We find this argument to be without merit. There is no reference to area square footage in the definition of "unit" in either the Act or declaration. Therefore, square footage has no bearing on the definition of unit.

Defendants next contend that the by-laws provide for the unit owners to maintain and repair all portions of their units, including the balconies. Typically, an owner's association has the duty to maintain and repair all common areas. *See, e.g., Carolina Forest Ass'n, Inc. v. White,* 198 N.C. App. 1, 3, 678 S.E.2d 725, 727 (2009) ("As is typical of many property owners associations . . . [the association] has responsibility for maintaining . . . common areas"). Although defendants correctly note the ambiguous nature of the "Maintenance and Repair" provision of the by-laws, the duty to maintain does not unilaterally define the property as a "unit" or "common area." Therefore, the duty to maintain and repair the balconies has no bearing on the definition of "unit."

We hold that balconies are not part of the units, as defined by the declaration and the Act because balconies are located on the exterior of the building, are not specified by the declaration as accessory spaces within the units, and do not provide direct access to any common areas or thoroughfares.

C. Common areas and limited common areas.

[2] The Act defines "common areas" to include "foundations, columns, girders, beams, supports, main walls, roofs . . . and [a]ll other parts of the property necessary or convenient to its existence, maintenance and safety, or normally in common use." N.C. Gen. Stat. § 47A-3(2) (2009). The Act qualifies this definition by stating, "unless otherwise provided in the declaration[.]" *Id.* The declaration provides that common areas shall retain the meaning set forth in the Act and further specifies that common areas consist of "property other than the units," as described above. Therefore, if balconies are not considered to be part of the units, then, by definition, they are considered to be common areas.

Both the Act and the declaration define "limited common areas" as common areas that are exclusively reserved for use by certain units. N.C. Gen. Stat. § 47A-3(7) (2009). The declaration further states that "[t]he board . . . is authorized to adopt rules for the use of the common areas and facilities, said rules to be furnished in writing to

the owners." In March 2008, the board published Rules and Regulations, which stated that "[b]alconies, which are legally considered limited common areas and are a major component of the exterior appearance of the building, are under the authority of the Board of Directors."

Because balconies are not specified as part of the units, they are considered part of the common area. The balconies in question are only accessible through sliding glass doors located in individual units. As such, the balconies can only be used by, and are reserved for, unit owners (and their guests) with such access. Further, the board circulated information regarding the categorization of balconies as "limited common areas" in the Rules and Regulations, published in March 2008. Taking into account all of the above factors, we find that the balconies in question fall squarely into the category of limited common areas.

D. Authority to install awnings.

Because balconies are categorized as limited common areas, the board is responsible for their administration and operation. "Whenever in the judgment of the board of directors the common areas . . . shall require additions, alterations or improvements, the board . . . shall proceed with such additions, alterations or improvements, and shall assess all unit owners for the costs thereof." The board properly voted to install awnings on certain balconies in order to enhance the overall appearance of the condominium and save energy. The board acted within the scope of its authority to elect to install the awnings, execute installation, and charge the costs of installation to the unit owners.

Because the board possesses the authority to install the awnings at issue, the unit owners do not have any right to deny access to the units to effectuate the installations. "The board . . . shall have the right to access to each unit to . . . maintain, repair or replace the common facilities contained therein." Powers and duties of the board include "[e]ntering any unit when necessary in connection with any maintenance or construction for which the board is responsible[.]" As a result, the trial court correctly denied defendants' motion for summary judgment in favor of plaintiffs.

### III. Cross-Assignments of Error

[3] Plaintiffs also argue that the trial court abused its discretion by staying the case, thereby causing damage to the HOA. They have fash-

ioned this argument as a cross-assignment of error. This is problematic for several reasons. The first of these is that cross-assignments of error no longer exist under our Rules of Appellate Procedure; they disappeared along with assignments of error when the Rules were revised in 2009. Under the previous Rules, Rule 10(d) provided, in relevant part:

> Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

N.C.R. App. P. 10(d) (2008). Under the revised Rules, appellees can instead denominate "Proposed Issues on Appeal as to an Alternative Basis in Law." N.C.R. App. P. 10(c) (2011). The new Rule 10(c) is similar to the old Rule 10(d) and reads, in relevant part:

> Without taking an appeal, an appellee may list proposed issues on appeal in the record on appeal based on any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an *alternative basis in law for supporting the judgment,* order, or other determination from which appeal has been taken.

N.C.R. App. P. 10(c) (2011) (emphasis added). Revised Rule 28(c), like former Rule 28(c), permits an appellee to "present issues on appeal based on any action or omission by the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." N.C.R. App. P. 28(c) (2011); *see* N.C.R. App. P. 28(c) (2008).

Here, the alleged error by the trial court—its decision to stay the case pending appeal—has not deprived plaintiffs of an alternative basis in law for supporting the judgment. Had the trial court denied defendants' motion for stay, it would have had no effect on the judgment itself; it would only have permitted plaintiffs to install the awnings sooner. Instead, this alleged error should have been separately preserved and made the basis of a separate cross-appeal. *See Harllee v. Harllee,* 151 N.C. App. 40, 51, 565 S.E.2d 678, 685 (2002) ("Whereas cross-assignments of error under Rule 10(d) are the proper procedure for presenting for review any action or omission of the trial court which deprives the appellee of an alternative basis in law for supporting the judgment, order, or other determination from

which appeal has been taken; the proper procedure for presenting alleged errors that purport to show that the judgment was erroneously entered and that an altogether different kind of judgment should have been entered is a cross-appeal."). Accordingly, we do not address the merits of plaintiffs' "cross-assignment of error."

## IV. Conclusion

Defendants failed to establish the existence of a genuine issue of material fact for the court to resolve. Consequently, the trial court did not err in granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment, and we affirm the trial court's order of summary judgment.

Affirmed.

Judges BRYANT and GEER concur.