IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-63

No. COA 20-246

Filed 16 March 2021

Hoke County, No. 18 CVS 868

ERIE INSURANCE EXCHANGE, Plaintiff

v.

EDWARD R. SMITH; ARCHIE N. SMITH, a minor; EMILY A. TOBIAS, as Administrator of THE ESTATE OF JOHN PINTO, JR., Deceased; VALLEY AUTO WORLD, INC.; UNIVERSAL UNDERWRITERS INSURANCE COMPANY; VW CREDIT LEASING, LTD.; and DOE INSURANCE COMPANIES 1-3; Defendants

Appeal by Defendant Universal Underwriters Insurance Company from Order entered 17 January 2020, by Judge James M. Webb in Hoke County Superior Court. Heard in the Court of Appeals 12 January 2021.

*Martineau King PLLC, by Lee M. Thomas and Elizabeth A. Martineau, for plaintiff-appellee Erie Insurance Exchange.*

*Van Camp, Meacham & Meacham, PLLC, by Thomas M. Van Camp, for defendant-appellees the Smiths.*

*Gallivan, White & Boyd, P.A., by James M. Dedman and Tyler L. Martin, for defendant-appellant Universal Underwriters Insurance Company.*

HAMPSON, Judge.

## **Factual and Procedural Background**

This appeal involves a Declaratory Judgment action filed consistent with N.C. Gen. Stat. § 1-283 *et seq.*, to establish the respective obligations, if any, of Erie

Insurance Exchange (Erie) and Universal Underwriters Insurance Company (Universal) to provide insurance coverage for liability arising from a 2016 car accident. Specifically, Universal appeals from an Order entered 17 January 2020, granting in part Erie's Motion for Summary Judgment, denying Universal's cross Motion for Summary Judgment, and entering a Declaratory Judgment adjudicating:

1. Universal was obligated to provide liability insurance coverage with limits of $500,000.00, umbrella liability coverage with limits of $10,000,000.00, and that the aggregate coverage of $10,500,000.00 was the primary insurance coverage for the liability arising from the 2016 accident; and

2. Erie was obligated to provide excess liability insurance coverage with limits in the amount of $100,000.00 per person and $300,000.00 per accident.

The factual background giving rise to the present case is set forth in this Court's earlier opinion in *Smith v. USAA Cas. Ins. Co.*, 261 N.C. App. 40, 819 S.E.2d 210 (2018), involving a separate but related action arising from the same underlying facts.

> On the morning of Saturday, 30 April 2016, Pinto went to [Valley Auto World (Valley)] for the purpose of trading in his 2004 Saturn and purchasing another vehicle. He ultimately decided to purchase the Beetle that had been traded in by Copes. Despite the fact that [Valley] did not actually own the vehicle, [Valley] sales representatives and Pinto nevertheless agreed upon a purchase price of $14,500 for the Beetle with a trade-in value of $2,000 for the Saturn. Because Pinto did not put any money down, a credit application was prepared and submitted by

[Valley] to VW Credit for $12,500, the full amount necessary to fund the purchase.

At 12:05 p.m., while Pinto remained on the [Valley] premises, [Valley] received a fax from VW Credit containing VW Credit's approval of $11,990 in financing for Pinto's purchase of the Beetle. As a result, a $510 gap remained between the amount of financing approved by VW Credit and the total purchase price of the vehicle that had been agreed upon by Pinto and [Valley]. Despite this shortfall, Gary Carrington, the business manager of [Valley], believed that he would ultimately be able to secure the full financing amount by resubmitting Pinto's credit application to VW Credit the following Monday. For this reason, Carrington proceeded to assist Pinto in completing the necessary paperwork memorializing the sale.

Among the various documents executed by Pinto and [Valley] on 30 April 2016 was a Conditional Delivery Agreement ("CDA"). The CDA stated, in pertinent part, as follows: DEALER'S obligations to sell the SUBJECT VEHICLE to PURCHASER and execute and deliver the manufacturer's certificate of origin or certificate of title to SUBJECT VEHICLE are expressly conditioned on FINANCE SOURCE'S approval of PURCHASER'S application for credit as submitted AND dealer being paid in full by FINANCE SOURCE.

Upon signing the documents provided to him by Carrington, Pinto drove the Beetle off the [Valley] lot that afternoon. Later that evening, Pinto was driving the Beetle when he was involved in a head-on collision (the "30 April Accident") with another vehicle being driven by Edward Smith. Smith's son, Archie, was a passenger in his vehicle. Pinto was killed in the collision, and both Edward Smith and Archie Smith were seriously injured.

Unaware of Pinto's death, Carrington resubmitted his credit application to VW Credit on 2 May 2016. At 4:40 p.m. that day, VW Credit faxed [Valley] its approval for the full $12,500 that [Valley] had requested. The following day, [Valley] paid off the balance owed to VW Credit under Copes' lease. On 9 May 2016,

> VW Credit executed a reassignment of title to [Valley]. [Valley], in turn, transferred title to Pinto on 23 May 2016.

*Id.* at 42-43, 819 S.E.2d at 612 (footnote and quotation marks omitted).

¶ 5    After the accident, the Smiths filed a Complaint alleging a Negligence action against Pinto's Estate and a Declaratory Judgment action seeking to establish, in part, the respective obligations of Erie and Universal to provide insurance coverage. *Id.* at 43, 819 S.E.2d at 612. Erie brought a crossclaim for Declaratory Judgment in that action. *Id.* In that case, the trial court also entered Summary Judgment concluding Universal was obligated to provide aggregate primary insurance coverage of up to $10,500,000.00 and Erie's policy provided excess coverage. *Id.* at 44, 819 S.E.2d at 613. On appeal, this Court vacated that order and remanded that case for additional proceedings after concluding there was a failure to join necessary parties precluding entry of a Declaratory Judgment. *Id.* at 49-50, 819 S.E.2d at 616-17. On remand, the trial court entered a Consent Order severing the Smiths' Negligence action from the Declaratory Judgment action and permitting Erie to re-plead its claim for Declaratory Judgment. *Id.*

¶ 6    As a result, on 19 November 2018, Erie, who issued the auto insurance policy to Pinto covering his 2004 Saturn, initiated this action by filing a Complaint for Declaratory Judgment "seeking a determination [by the trial court] concerning its rights and obligations under a policy of insurance issued by it[.]" Universal, as the

insurer for Valley, the dealer that sold the Beetle to Pinto, filed its Answer to Erie's Complaint on 30 January 2019, in which it also asserted counterclaims against Erie and sought Declaratory Judgment. On 21 October 2019, both Erie and Universal filed cross Motions for Summary Judgment seeking a determination of the application of N.C. Gen. Stat. § 20-75.1 addressing the conditional delivery of vehicles by a dealer to a purchaser and the obligations of a dealer to provide liability insurance in conditional delivery transactions.

¶ 7 After hearing arguments from the parties on 13 December 2019, the trial court entered its Order on 17 January 2020, ultimately granting Erie's Motion for Summary Judgment in part, denying Universal's Motion for Summary Judgment, and entering Judgment against Universal and Erie. The trial court determined "all necessary parties to this dispute have been joined and provided the opportunity to be heard in this matter." Then, the trial court concluded the transaction between Pinto and Valley, as the dealer, was a conditional sale and delivery and "Pinto was operating a covered vehicle with permission, [and] he became an insured under the terms of the Dealer's policy[ ]" and, therefore, N.C. Gen. Stat. § 20-75.1 applied. As it related to the policies' respective coverage, the trial court ordered:

> 2. With respect to the 30 April 2016 accident, Universal's policy issued to Dealer provides to Estate liability coverage of $500,000.00 and umbrella liability coverage of $10,000,000.00. This aggregate coverage of $10,500,000.00 is primary.

> 3. Erie's policy issued to Pinto provides to Estate excess liability coverage in the amount of $100,000.00 per person and $300,000.00 per accident, collectible only after Universal's aggregate policy limits of $10,500,000.00 have been exhausted.

Universal filed Notice of Appeal from the trial court's Order on 29 January 2020. The trial court's Order, which fully and conclusively establishes the rights and responsibilities of the parties in a Declaratory Judgment, operates as a final judgment. *See* N.C. Gen. Stat. § 1-283 (2019). Thus, this Court has jurisdiction to review Universal's appeal as a final judgment of a superior court. N.C. Gen. Stat. § 7A-27(b)(1). In addition, without taking a cross appeal, Erie purports to challenge the trial court's ruling it is obligated to provide excess insurance coverage for the accident.

## Issues

The dispositive issues in this appeal are: (I) whether Valley's sale and delivery of the Beetle to Pinto was a conditional delivery under N.C. Gen. Stat. § 20-75.1 such that Universal, as the dealer's insurer, was obligated to provide insurance coverage at the time of the accident; and if so, (II) whether such insurance coverage by Universal operated as the primary or excess insurance coverage; (III) what coverage limits are applicable under Universal's liability insurance policy with the dealer; (IV) whether Universal is obligated to provide additional coverage for the accident under its umbrella insurance policy covering the dealer; and (V) whether this Court has

appellate jurisdiction to review Erie's separate challenge to the trial court's Order concluding Erie is obligated to provide excess insurance coverage for liability arising from the accident.

## Standard of Review

We review a trial court's grant of summary judgment de novo. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted). We also review questions of statutory interpretation and a "lower court's interpretation of an insurance policy's language[,]" de novo. *Satorre v. New Hanover Cnty. Bd. of Comm'rs*, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004); *JVC Enters., LLC v. City of Concord*, 269 N.C. App. 13, 16, 837 S.E.2d 206, 209 (2019) ("The *de novo* standard also applies to questions of statutory interpretation." (citation omitted)).

## Analysis

### I. Conditional Delivery

As a threshold matter, Universal contends the trial court erred in determining N.C. Gen. Stat. § 20-75.1, which governs the conditional delivery of motor vehicles, applied to the transaction in the present case. N.C. Gen. Stat. §20-75.1 (2019). Universal argues its coverage never extended to Pinto as the Beetle's purchaser because "Pinto had 'obtained' financing prior to the sale and delivery of the [Beetle] and that [Valley] did not consider the sale of the [Beetle] at issue to be a 'conditional' sale."

¶ 12        Section 20-75.1 was enacted in 1993 as a part of North Carolina's Motor Vehicle Act "to clarify the law relating to the conditional delivery of motor vehicles and to provide for insurance coverage for vehicles added to existing policies on nonbusiness days." 1993 N.C. Sess. Laws 328 (N.C. 1993). In relevant part, Section 20-75.1 provides:

> Liability, collision, and comprehensive insurance on a vehicle sold and delivered conditioned on the purchaser obtaining financing for the purchaser of the vehicle shall be covered by the dealer's insurance policy until such financing is finally approved and execution of the manufacturer's certificate of origin or execution of the certificate of title. Upon final approval and execution of the manufacturer's certificate of origin or the certificate of title, and upon the purchaser having liability insurance on another vehicle, the delivered vehicle shall be covered by the purchaser's insurance policy beginning at the time of final financial approval and execution of the manufacturer's certificate of origin or the certificate of title.

N.C. Gen. Stat. § 20-75.1.

¶ 13        In its Order denying Universal's Motion for Summary Judgment, the trial court concluded "the transaction between [Pinto] and [Valley] involved a conditional sale and delivery of the 2013 Volkswagen Beetle automobile at issue, and North Carolina's 'Conditional [D]elivery of [M]otor [V]ehicles' statute applies to the transaction." Conducting a de novo review of the Record, we agree with the trial court and conclude Universal's argument asserting Pinto had already obtained financing is inconsistent with both the plain language of the statute and this Court's precedent.

*See Hester v. Hubert Vester Ford, Inc.*, 239 N.C. App. 22, 27, 767 S.E.2d 129, 134 (2015) ("[T]ransferring auto insurance to a consumer's policy is only supposed to occur once financing is finalized and the consumer has taken title to the vehicle." (citing N.C. Gen. Stat. § 20-75.1)).

¶ 14        Here, undisputed evidence in the Record reflects Pinto did not fully obtain financing "finally approved" before he left Valley in the Beetle on Saturday 30 April 2016. N.C. Gen. Stat. § 20-75.1. Pinto visited Valley to look for a newer car and settled on the 2013 Beetle at a purchase price of $14,500.00. Pinto traded in his 2004 Saturn for a $2,000.00 credit.[1] To cover the remainder of the balance, Pinto applied for financing through VW Credit in the amount of $12,500.00. Prior to his departure on 30 April, Pinto's application was approved for financing in the amount of $11,990.00, leaving a balance due of $510.00. Pinto signed the CDA on 30 April 2016, which provided, "[Valley's] obligations to sell the [Beetle] to [Pinto] and execute and deliver the manufacturer's certificate of origin or certificate of title to [the Beetle] are expressly conditioned on FINANCE SOURCE'S approval of [Pinto's] application for credit *as submitted* AND dealer being paid in full . . . ."[2] (emphasis added). It was

---

[1] At that time, Pinto did not provide Valley with the Saturn's title and executed a "We Owe Form" identifying he owed Valley the title to the trade-in vehicle.

[2] On appeal, Universal argues the CDA is merely a formality because Valley requires all customers execute one regardless of financing status. That may well be the case in many, if not most, instances. However, it does not alter the specific facts of this case in which the

not until the following Monday, 2 May 2016, that Valley resubmitted Pinto's credit application and Pinto was approved, *as submitted*, for the full balance of $12,500.00. Therefore, at the earliest, Pinto "obtained financing" for the Beetle on 2 May 2016.[3]

¶ 15        Universal's assertion that Valley's employees considered the financing to be final despite the $510.00 balance is not conclusive. N.C. Gen. Stat. § 20-75.1 is clear: "[I]nsurance on a vehicle sold and delivered conditioned on the purchaser *obtaining financing* for the purchaser of the vehicle shall be covered by the dealer's insurance policy until such financing is finally approved and execution of the manufacturer's certificate of origin or execution of the certificate of title." N.C. Gen. Stat. § 20-75.1 (emphasis added). "[W]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning[.]" *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 244, 539 S.E.2d 274, 277 (2000) (citations and quotation marks omitted).

¶ 16        Valley delivered the Beetle to Pinto conditioned on Pinto's obtaining approval of the full financing, as verified in the CDA, in order to pay Valley the purchase price in full. At the earliest, such financing was obtained on 2 May 2016, when VW Credit

---

delivery was, in fact, "expressly conditioned" on the approval of the full financing, which approval had not been obtained at the time of delivery.

[3] Because we conclude on the Record that Pinto could not have "obtained" financing prior to 2 May 2016, when his credit application was approved in full, we do not address the issues surrounding the transfer of title, which ultimately did not happen until 23 May 2016.

approved Pinto's application for the full amount—two days after the accident giving rise to the present case—and, at the latest, on 23 May 2016, when Pinto was transferred title to the Beetle from the North Carolina Department of Motor Vehicles. Thus, at the time of the accident on 30 April 2016, Pinto was operating a conditionally delivered vehicle required to be insured by the dealer under N.C. Gen. Stat. § 20-75.1. Therefore, at the time of the accident, the Beetle was a covered vehicle under Valley's insurance policy issued by Universal. Consequently, the trial court properly granted Summary Judgment on this question, and the trial court's Order in this regard is affirmed.

## II. Primary Coverage

¶ 17   Universal contends, in the event Section 20-75.1 applies, the trial court erred in determining its coverage is primary because Section 20-75.1 "does not resolve the issue of priority of coverage." We conclude the trial court correctly determined Universal's coverage is primary.

¶ 18   Here, it is undisputed Valley was the dealer and Universal is Valley's insurer. As discussed above, Section 20-75.1 compels "the vehicle *shall be covered by the dealer's insurance policy*" and as such, Universal's policy issued to Valley in the present case applies. N.C. Gen. Stat. § 20-75.1 (emphasis added). Although Universal's policy provides, "[w]hen there is other insurance applicable, WE will pay only the amount required to comply with such minimum limits after such other

insurance has been exhausted[,]" Section 20-75.1 expressly states, "the purchaser of the vehicle shall be covered by the *dealer's* insurance policy" where a vehicle is "sold and delivered conditioned on the purchaser obtaining financing[.]" *Id.* Universal points to no other insurance policy issued to or covering the dealer in this case under Section 20-75.1. Because Section 20-75.1 applies to the underlying transaction and requires liability coverage by Universal as Valley's insurer, we also conclude Universal's coverage is primary. The trial court's Order in this regard is affirmed.

### III. Minimum Limits

Next, Universal contends it is only required to provide liability insurance coverage in this case in compliance with the minimum statutory limits of North Carolina law. In its Order, the trial court determined Universal's policy provides "liability coverage of $500,000.00 and umbrella liability coverage of $10,000,000.00." Although Section 20-75.1 extends Universal's coverage to Pinto, it only provides Pinto "shall be covered by the dealer's insurance policy"; to discern the extent of Universal's coverage, we must examine the terms of Universal's insurance policy. *Nationwide Mut. Ins. Co. v. Massey*, 82 N.C. App. 448, 450, 346 S.E.2d 268, 270 (1986) ("To the extent coverage provided by motor vehicle liability insurance policies exceeds the mandatory minimum coverage required by statute, the additional coverage is voluntary, and is governed by the terms of the insurance contract.").

Universal argues Pinto is insured only up to the minimum limits as required

by North Carolina Law—$30,000.00 per person or $60,000.00 per accident—because Pinto is a permissive user by operation of law and not a named policyholder. *See* N.C. Gen. Stat. § 20-279.21(b)(2) (2019). Universal's policy contains two provisions Universal concedes are "potentially applicable": Coverage Part 500 (Garage Liability) or Coverage Part 830 (Basic Auto Liability). The Smiths argue Garage Liability does not apply under the circumstances because the injury was not the result of an "AUTO HAZARD" or "GARAGE OPERATION" as defined within the provision. However, regardless of whether Pinto would be covered under Garage Liability, the express language of Universal's Basic Auto Liability provision does apply to provide coverage to Pinto.

¶ 21     Basic Auto Liability, Coverage Part 830, provides as follows:

> *Who Is An Insured*
>
> A. With respect to INJURY and COVERED POLLUTION DAMAGES:
>
> . . . .
>
> 4. any other person or organization required by law to be an INSURED while using an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO within the scope of YOUR permission, unless it is being loaded or unloaded. . . .
>
> . . . .
>
> *The Most We Will Pay*
>
> A. Injury and Covered Pollution Damages

> 1. Regardless of the number of INSUREDS or AUTOS insured or premiums charged by this coverage part, . . . the most WE will pay is the applicable limit shown in the declarations for any one OCCURRENCE.
>
> However, with respect to parts A.3 and A.4 of the Who Is An Insured condition for:
>
>> a. any CONTRACT DRIVER; or
>>
>> b. any other person or organization required by law to be an INSURED while using an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO within the scope of YOUR permission,
>
> the most WE will pay is that portion of such limits required to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount required to comply with such minimum limits after such other insurance has been exhausted.

The policy further defines an "OWNED AUTO" as "an AUTO YOU own or LEASE and is scheduled in the declarations, and any AUTO YOU purchase or lease as its replacement during the Coverage Part period."

Thus, Pinto, was a "person . . . required by law to be an INSURED while using an OWNED AUTO . . . within the scope of YOUR permission[,]" covered under part

A.4 of Universal's Basic Auto Liability policy.[4] However, as Universal correctly notes, its policy expressly limits payments for individuals covered by operation of law to "that portion of such limits required to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place."

¶ 23 The Smiths' argument Section 20-75.1 entitled them to the full policy limits of the liability coverage is unpersuasive. As this Court previously emphasized, "[t]o the extent coverage provided by motor vehicle liability insurance policies exceeds the mandatory minimum coverage required by statute, the additional coverage is voluntary, and is governed by the terms of the insurance contract." *Nationwide Mut. Ins. Co.*, 82 N.C. App. at 450, 346 S.E.2d at 270.

¶ 24 Accordingly, the express terms of Universal's "insurance contract" only required Universal to insure Pinto in accordance with the minimum limits provisions of North Carolina law during the conditional-delivery period under N.C. Gen. Stat. § 20-75.1. The limits, therefore, are those provided in Section 20-279.21—"thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any

---

[4] The Smiths argue because the Beetle was transferred to Valley for sale, it is not an "OWNED AUTO." Indeed, as this Court noted in *Smith*, "VW Credit remained the title owner of the [Beetle]." *Smith*, 261 N.C. App. at 42, 819 S.E.2d at 612. However, this issue is not of significant consequence. Regardless of whether the Beetle was an "OWNED AUTO" under Universal's policy, Universal is still required by operation of law to insure Pinto because Universal is the *insurer of the Dealer*. N.C. Gen. Stat. § 20-75.1 ("the purchaser of the vehicle shall be covered by the dealer's insurance policy"). Such insurance, moreover, would be required to meet the minimum limits of North Carolina law. Therefore, whether Valley was the title owner of the Beetle at the time of the sale is not material. Valley was the *Dealer*.

one accident and, subject to said limit for one person, sixty thousand dollars ($ 60,000) because of bodily injury to or death of two or more persons in any one accident[.]" N.C. Gen. Stat. § 20-279.21 (2019). Thus, the trial court erred in ruling the $500,000.00 Universal policy limits applied in this case. Therefore, we vacate the portion of the trial court's Order as to the amount of Universal's liability coverage and remand this matter to the trial court to enter a judgment reflecting that the Universal liability policy provides coverage up to the applicable minimum statutory limits as provided in N.C. Gen. Stat. § 20-279.21.

## IV. Umbrella Coverage

Universal also contends the trial court erred in determining it was required to provide additional umbrella coverage of $10,000,000.00 for liability arising from the accident in this case under its policy issued to Valley. Universal's policy contains two provisions outlining its umbrella coverage: Coverage Part 970 (Personal Umbrella) and Coverage Part 980 (Commercial Umbrella). Personal Umbrella limits "*Who Is An Insured*" to: "A. YOU; B. If a resident of YOUR household: 1. YOUR spouse; 2. a relative or ward of YOURS; 3. any other person under the age of 21 in the care of any of the foregoing." Meanwhile Commercial Umbrella limits "*Who Is An Insured*" to:

    1. YOU; . . .

    2. YOUR directors, executive officers or stockholders.

        . . . .

5. any other person or organization:

 a. named in the UNDERLYING INSURANCE (provided to the Named Insured of this coverage part);

 b. granted INSURED status under:

  (1) Parts A.5 or A.6 of the Who Is An Insured condition in Coverage Part 500 - Garage; or

  (2) Parts A.7 or A.8 of the Who Is An Insured condition in Coverage Part 660 - General Liability;

¶ 26   Here, it is evident from the plain language of the policy the Personal Umbrella coverage is inapplicable to the claims asserted. Moreover, Pinto would only have been covered under the Commercial Umbrella coverage provisions if he was either a named insured in the underlying policy or granted insured status under respective Coverage Parts listed above. Pinto was not a named insured in the underlying policy. Pinto was insured by operation of law pursuant to Basic Auto Liability Coverage Part 830 subsection A.4, and not under the provisions granting insured status listed in the Commercial Umbrella policy coverage. Thus, neither Universal's Personal Umbrella nor Commercial Umbrella coverage provisions provide an avenue for Pinto to be insured under the umbrella coverage. Accordingly, the trial court erred when it determined Pinto was entitled to "umbrella liability coverage of $10,000,000.00." The portion of the trial court's Order determining Pinto was entitled to umbrella coverage is reversed, and this matter is remanded to the trial court to enter a judgment

reflecting the Universal umbrella policy issued to Valley is not applicable in this case.

V. Erie's Challenge to the Trial Court's Order

In its Appellee's Brief, Erie contends the trial court erred in concluding Erie's auto insurance policy issued to Pinto provided "excess liability coverage in the amount of $100,000.00 per person and $300,000.00 per accident, collectible only after Universal's aggregate policy limits of $10,500,000.00 have been exhausted." Erie argues the trial court erred when it denied Erie's Motion for Summary Judgment asserting Erie's policy was not implicated at all. Erie concedes it did not file a Notice of Appeal or Cross Appeal from the trial court's Order in compliance with Rule 3 of the North Carolina Rules of Appellate Procedure; however, Erie contends its argument constitutes an "alternative basis in law" supporting the trial court's Order under N.C.R. App. P. 28(c) to which no separate notice of appeal was required by Erie as an appellee.

North Carolina Rule of Appellate Procedure 28(c) provides: "Without taking an appeal, an appellee may present issues on appeal based on any action or omission of the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." N.C.R. App. P. 28(c) (2021). However, "the proper procedure for presenting alleged errors that purport to show that the judgment was erroneously entered and that an altogether different kind of judgment should have been entered is a cross-appeal."

*Harllee v. Harllee*, 151 N.C. App. 40, 51, 565 S.E.2d 678, 684 (2002).

¶ 29 Here, Erie's argument is directed at the trial court's conclusion Erie's policy provided Pinto excess liability coverage. This is not an alternative basis in law for supporting entry of the Order; Erie's argument is that "an altogether different kind of [order] should have been entered"—an order granting their motion for summary judgment in full. *Id.* Thus, "this alleged error should have been separately preserved and made the basis of a separate cross-appeal*." Bd. of Dirs. of Queens Towers Homeowners' Assoc. v. Rosenstadt*, 214 N.C. App. 162, 168, 714 S.E.2d 765, 770 (2011) (citation omitted). Therefore, because Erie did not notice its appeal from the trial court's Order as required by Rule 3, this Court does not have jurisdiction under Rule 28(c) over Erie's arguments. *See Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000) ("In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure."). In the absence of jurisdiction to review Erie's argument, we dismiss Erie's arguments; the trial court's Order adjudicating Erie's obligation to provide insurance coverage for liability arising from the accident in this case must be left undisturbed.

## **Conclusion**

¶ 30 Accordingly, the trial court's Order concluding that Section 20-75.1 applies to the conditional delivery of the Beetle, and therefore that the Universal liability

insurance policy issued to Valley is the primarily applicable insurance policy in this case is affirmed. The portion of the trial court's Order concluding Universal's policy provided liability insurance up to the amount of $500,000.00 is vacated and this matter remanded for the trial court to enter Judgment reflecting the Universal liability policy provides coverage for the accident in this case only up to the minimum statutory limits provided in N.C. Gen. Stat. § 20-279.21.

¶ 31    The trial court's conclusion the Universal policy issued to Valley provides umbrella coverage in the amount of $10,000,000.00 is reversed and this matter remanded to the trial court to enter judgment reflecting the Universal umbrella policy does not provide coverage in this case. In the absence of a valid cross appeal, Erie's argument is dismissed and the trial court's Order concluding Erie is obligated to provide excess coverage upon the exhaustion of the applicable coverage limits under Universal's policy in this case is affirmed.

AFFIRMED IN PART; VACATED IN PART; REVERSED IN PART; AND REMANDED.

Judges TYSON and MURPHY concur.